# OCTOBER TERM, 1889.*

THE MICHIGAN BUILDING & SAVINGS ASSOCIATION v. JOHN McDEVITT AND CARRIE McDEVITT.

*Savings associations—Sale of shares—Rights of members.*[1]

1. A member of a co-operative savings association organized under chapter 119, How. Stat., may *sell* his shares to the corporation, or to any member, or to any other person who may be approved, in such manner and upon such terms as the by-laws may prescribe, but after a sale to the corporation in liquidation of his shares he cannot again sell the same shares to another person, nor is there any way provided by which he can again become the holder or owner of the liquidated shares.

   So *held*, where a member sold his shares to the corporation, and received the advance to which the sale entitled him, and secured the payment of his periodic payments and interest by bond and mortgage, and afterwards assumed to sell the same shares to a third person, which transfer the corporation refused to recognize, and on default being made filed a bill to foreclose the mortgage.

2. The opinion discusses and construes the statute under which co-operative savings associations are organized, holding that they are creatures of the statute, and that the rights, duties, and obligations of members are such as it prescribes.

Appeal from Jackson. (Peck, J.) Argued June 28, 1889. Decided October 18, 1889.

Bill to foreclose a mortgage. Defendants' appeal. Affirmed. The facts are stated in the opinion.

---

* Continued from Vol. 76.
[1] For full digest of points decided, see *Table of Cases Reported.*

*Josiah T. Hammond (Barkworth & Cobb,* of counsel), for complainant.

*Richard Price* and *D. D. Root,* for defendants.

[The points of counsel, and authorities cited, are fully stated in the opinion.—REPORTER.]

CHAMPLIN, J.　The complainant is a corporation organized under Act No. 206, Laws of 1877, being chapter 119, How. Stat.　The act is entitled—

"An act to authorize the incorporation of co-operative savings associations."

Section 1 declares the purpose to be that—

" Of saving and investing among themselves, and accumulating sums to be paid at intervals of not exceeding one month, by its members, in proportion to their interests in the funds to be invested or accumulated."

By section 2 the persons associating are required to state in their articles—

"The name, location, and place of business of such corporation; the amount of each share therein, the periods for payments on the shares, and the amount of each payment thereon; the maximum number of shares;　*　*　* the period of the corporate existence,　*　*　* which shall not be less than three years, nor more than ten years, and be further limited to the number of periods necessary to pay in full the shares subscribed for in the manner proposed," etc.

Section 5 provides that—

" The shares of such corporation shall not be less than twenty-five dollars nor more than one hundred and twenty-five dollars each; the total nominal amount of all such shares shall not exceed three hundred thousand dollars; no person shall become the owner of more than sufficient of said shares to amount to the nominal value of two thousand and five hundred dollars."

Provision is also made for shares to be taken by a

parent or guardian, who becomes personally responsible for the shares. The right to vote is confined to the holders of one or more shares in the corporation in their own right, being of full age, and each holder is entitled to but one vote, and no voting by proxy is allowed. An initiation fee of one dollar may be charged to each member at the time of organizing, and thereafter it may be increased, in the discretion of the board of directors, so as to make the investment of new members equal to that of an original corporator.

Such corporations are by section 8 authorized to adopt by-laws for the collection of fines by way of penalty for any failure to pay periodical dues, or to carry into effect any agreement made by the corporation with a member, or any other infraction of the reasonable by-laws or articles of association; and such fines are made a lien upon the interest of the member upon whom they are imposed in the said corporation. But the amount of such unpaid fines chargeable against any member who is not an officer shall at no time exceed the annual profits of such member upon the share or shares held by him; and any member, not an officer, is entitled at any time, by making a demand in writing, and a surrender to the corporation of all accrued profits, to be repaid all moneys paid by him on his share or shares, except initiation fees, and with such interest, if any, as the by-laws shall in such case provide. Such surrender of profits cancels all fines against members who are not officers. If any member shall continuously neglect for 60 days to pay the periodic dues required of, or fines imposed upon, him, the corporation may pay or tender to him the amount which he may have actually paid as periodic dues, with interest, or such interest as the by-laws in such case provide for, and with or without initiation fee, as the by-laws provide; and thereupon all the rights and

liabilities of such member in such corporation cease and are determined.

Section 9 provides:

"Any member may dispose of any share held by him to any member holding less than the maximum number of shares, or to any other person who may be approved, in such manner and upon such conditions as the by-laws shall prescribe."

Section 13 provides:

"No member of such corporation shall receive any greater pecuniary benefit or advantage from his share therein than its payment in full, at its nominal or par value; every discount and sum of interest allowed or paid, and every fine or penalty collected, shall, equally and ratably in proportion to their shares, be for the benefit and advantage of selling and non-selling members; and every agreement which any shareholder may make in regard to payments for his share, or for additional payments in case of sale thereof, shall be construed to have been fully performed whenever he shall have contributed in dues or additional dues his ratable proportion of the sums necessary, with the profits accruing from initiation fees, discounts, dues, fines, and all other sources, after paying all expenses, to pay in full all shares in the corporation. Whenever such payments shall have been made, the said corporation shall cease and determine for all purposes, except winding up its affairs. The cancellation and discharge of a security given by a selling shareholder, to an amount equal to his share or shares, shall be deemed the payment thereof."

It is provided by section 17 of the act, among other things, as follows :

"The duties of all officers shall be prescribed by by-laws adopted by the corporators; and all powers granted by this act, not expressly devolved thereby, or by the articles of association or some by-law, upon one or more officers of the corporation, shall be exercised by the corporators only, at meetings when the quorum required by section six shall be present."

By section 6 a quorum must consist of such number,

not less than 15, as the articles of association or by-laws shall prescribe.

The law does not provide for a board of directors. The affairs of the corporation are managed by the officers, whose duties are prescribed by the articles of association and the by-laws; and, where the articles and by-laws are silent, the corporators have the sole power to control the affairs, and determine what shall and what shall not be done.

The articles of association of the complainant corporation placed the shares therein at $125. Each member was required to pay 25 cents each Wednesday night as weekly dues; and every member who has received a loan upon his share or shares was required to pay, in addition to his weekly dues, 15 cents interest on each share, weekly, for which he has received a loan, such interest to commence on the day when he receives the loan, and to continue until the dissolution of the association. Articles 7, 8, 11, 12, and 14 of the by-laws read as follows:

"Art. 7. Every shareholder who has been awarded a loan by the association shall, before receiving the money, give such security as prescribed by the constitution, to be approved of by the directors. He obligates himself to pay promptly all dues on his share, and the interest, as well as fines, if any there be; to keep the mortgaged buildings insured, to pay all taxes when due, and to obey all rules and regulations provided by the constitution and by-laws. He shall furthermore transfer and deliver up to the association the insurance policy covering such property.

"Art. 8 (as amended December 17, 1884). If a member neglects to give satisfactory security for the loan within four weeks from the date of its being awarded to him, he shall be charged with such losses as the association may sustain, and the money shall revert to the association. A member who has been awarded a loan shall have the privilege to receive a loan for as many shares as he holds at a like premium, if he designates the number of shares for which he desires a loan, immediately after such award.

After a member has been awarded a loan, his shares on which he has received a loan are not transferable until security is given and accepted."

"Art. 11. Every member shall have the privilege of transferring his share, upon which no loan has been given, to another person, but only through the financial secretary, with the consent of the board of directors. The fee for transferring to members shall be fifty cents; to others, one dollar. No share can be transferred while the original owner owes any debt, fine, or claim to the association.

"Art. 12. The board of directors may, if they deem it necessary, proceed to foreclose mortgages against members who have received loans from the association on mortgage security, and who are in arrears for sixty days with the payment of their weekly dues, interest, fines, or any part thereof; and in that event the whole of the advanced loan, together with the interest, shall become due and payable immediately."

"Art. 14. The directors and officers shall serve without pay, unless otherwise expressly provided for by these by-laws."

On October 16, 1886, John McDevitt was the holder of nine shares of the complainant corporation, and on that day he sold his said nine shares to the corporation, under the rules and regulations of the corporation, and the statute in such case made and provided, for which he received an advance to which said sale entitled him; and, to secure the payment of his periodic payments and interest, he gave his bond to the complainant, conditioned as follows:

"The condition of this obligation is such that if the above-bounden John McDevitt, his heirs, executors, or administrators, shall and do well and truly pay, or cause to be paid, unto the above-named Michigan Building & Savings Association, or to its certain attorney or assigns, the sum of twenty-five cents per week as weekly dues, and the sum of fifteen cents per week as interest on each of twenty shares of its capital stock (each share being one hundred and twenty-five dollars), on Wednesday of each and every week during its continuance, and shall

conform to all the requirements of its constitution and by-laws, and shall further keep and perform, all and singular, the covenants and agreements specified in a certain mortgage, bearing even date herewith, and collateral hereto, executed by John McDevitt and Carrie McDevitt, his wife, together with those hereinafter expressed, without fraud or delay, then the preceding obligation to be void, otherwise to remain in full force and virtue.

"And it is hereby expressly agreed that should any default be made in the payment of the said interest, taxes, assessments, or insurance, or of any part thereof, on any day when the same is made payable as above specified, and should the same remain unpaid and in arrear for the space of sixty days, then and from thenceforth—that is to say, after the lapse of the said sixty days—the aforesaid sum of twenty-five hundred dollars, with all arrearage of interest, taxes, assessment, or insurance thereon, shall, at the option of said obligee, its successors or assigns, become and be due and payable immediately thereafter, although the period above limited for the payment thereof may not then have expired, anything thereinbefore contained to the contrary thereof in any wise notwithstanding."

He also, together with his wife, Carrie McDevitt, executed a real-estate mortgage as security for said loan. The mortgage contained the following among other conditions:

"That if the said parties of the first part shall and do well and truly pay, or cause to be paid, to the said party of the second part, the sum of twenty-five cents per week as weekly dues, and the sum of fifteen cents per week as interest on each of twenty shares of its capital stock (each share being one hundred and twenty-five dollars), on Wednesday of each and every week during its continuance, and shall conform to all of the requirements of its constitution and by-laws, according to a certain bond, bearing even date herewith, executed by John McDevitt to said party of the second part, to which these presents are collateral, and shall also pay, or cause to be paid, all taxes and assessments, of whatever nature, which may be levied upon said premises above described, as soon and as often as the same may become due and payable. And the said first parties do hereby covenant and promise to

and with said second party, its representatives and assigns, that they, the said first parties, will pay to the second party the full sum of, twenty-five hundred dollars, with interest, as above provided.

"And it is hereby expressly agreed that should any default be made in payment of the said interest, taxes, assessments, or insurance, or any part thereof, on any day whereon the same is made payable, as above expressed, and should the same remain unpaid and in arrear for the space of sixty days, then and from thenceforth—that is to say, after the lapse of the said sixty days—the aforesaid principal sum of twenty-five hundred dollars, with all arrearage of interest thereon, and all taxes, assessments, and insurance unpaid, shall, at the option of said obligee or assigns, become and be due and payable immediately thereafter, notice of which option is hereby expressly waived, although the period above limited for the payment thereof may not then have expired, anything thereinbefore contained to the contrary thereof in any wise notwithstanding."

It is averred in the bill, and admitted in the answer, as follows:

"And your orator further shows that by a provision of the by-laws adopted by your orator, to wit, article 10 thereof, it is provided that for non-payment of weekly dues a member shall be fined five cents for each share held by him or her; and a member who has drawn a loan from said association, and neglects to pay his weekly interest, shall pay for every such neglect a fine of five cents on each share drawn, as by reference to said provision of said by-laws, so adopted by your orator as aforesaid, will more fully appear.

"And your orator further shows unto the court that article 12 of said by-laws, so adopted, provides that the board of directors of said association may, if they deem it necessary, proceed to foreclose mortgages against members who have received loans from the association upon mortgaged security, and who are in arrears for sixty days with the payment of their weekly dues, interest, fines, or any part thereof; and in that event the whole of the advanced loan, together with the interest, shall become due and payable immediately thereafter."

The complainant avers that payment of the weekly dues

and interest was made by defendant John McDevitt until and including January 5, 1887, at which date said defendant ceased to pay such dues or interest, or any part thereof, and that they remained in arrear more than 60 days, and the board of directors declared the whole amount due and payable at once, and directed a foreclosure of the mortgage.

The bill alleges, and the answer admits, that although the bond and mortgage recite that they were given for twenty shares, and to secure the payment of $2,500, only $1,125 was borrowed upon nine shares.

The defendants, in answer to the bill, say that the security for the loan of $1,125 on said nine shares was given by said bond and mortgage, and was accepted by the board of directors; and that under by-law No. 8, and section No. 9 of the statute, he had a right to transfer any one or more of his shares to any person who should be approved by the board of directors; that on December 29, 1886, defendant John McDevitt transferred two of his shares to Dwight D. Root, of the city of Jackson, where said corporation was located, and on that day McDevitt notified the corporation complainant of such transfer, and made written application to the board of directors to have such transfer recorded upon the books of the corporation; and at a regular meeting of the association held on the same day he tendered to complainant the full amount of the weekly dues and interest due on the nine shares, namely, $2.80 for the seven shares held by him, and 80 cents for the two shares held by said Root, which complainant refused to receive, and refused to give him credit for said dues and interest, and said board of directors also refused to record the transfer of said two shares upon the books of complainant.

Defendants further aver that after the transfer of the two shares to Root they continued to pay their weekly

dues and interest upon the seven shares which were still held by John McDevitt, up to and including January 12, 1887; and on January 19, 1887, he transferred to said Dwight D. Root the seven remaining shares, and gave a written notification of such transfer to the board of directors, and requested them to record such transfer upon the books of the complainant, and at the same time tendered to them, in behalf of said Root, the weekly dues and interest then due on the said nine shares, namely, $3.60, but they refused to either record said transfer, or accept the dues and interest thus tendered. They allege that they also tendered to the complainant the proper transfer fee, and also for recording, and they deny that they are in arrears for dues or interest.

The testimony was taken in open court as in a case at law; and the court, upon pleadings and proofs, pronounced a decree in favor of complainant.

Co-operative savings associations organized under chapter 119, How. Stat., by whatever name they adopt, are creatures of the statute, and the rights, duties, and obligations of members are such as the statute prescribes. They have very few of the common-law powers of corporations, as the whole scheme is marked out and defined by the statute.

However much unincorporated associations for the same object may partake of the nature of partnerships, and be governed by the analogies afforded by the law of partnership, it is clear that, under our statutes, incorporated companies have very little, or none, of the characteristics of partnerships. Differing from some associations of a kindred nature, our statute does not contemplate or permit any profit over and above the par value of the shares taken to be made. It is not intended that these associations shall be investment companies, where capitalists may place their money as a source of profit; but the

object is to encourage habits of frugality among the
laboring and industrial classes, whose weekly or monthly
earnings are small, who, by laying aside a small portion
periodically, are enabled to receive at the termination of
the association a sum equal to the total amount sub-
scribed for. The rate of interest allowed is not to exceed
7 per cent.; and whenever, and as soon as, the initiation
fees, discounts, interest, fines, and dues, after paying all
expenses, equal the value of the shares, the corporation
ceases for all purposes except winding up its affairs.

The scheme of the statute, further, is to accelerate the
termination of the corporation by purchasing shares of
members at a discount. This benefits the member selling
his shares, and the other members also. It benefits the
seller by enabling him to realize the amount coming to
him upon the dissolution of the corporation in advance
of that time. For this benefit he discounts his shares,
and also pays interest on a sum equal to the full amount
of his shares; the money he receives down being con-
sidered equal in value to the shares sold. This discount
and interest also benefits all the members, including the
seller, because it is applied equally upon all shares, and
thus accelerates the time of dissolution, when all periodic
payments cease.

Under our statute, the selling member receives no more
money from the corporation than the sum for which he
sold his shares. The shares purchased by the corpora-
tion remain upon the books, and are recognized in ascer-
taining the amount to be credited to each member; but
all credits to such selling member are received and cred-
ited as payments upon his obligation to pay the shares
subscribed for by him. And hence it follows that,
although he never receives any more money, he pays less
for such shares, inasmuch as the general fund of the cor-

poration is re-inforced for initiation fees, discounts, interest, and fines, and is distributed *pro rata,* in proportion to all the shares of the corporation.

It is also the scheme of the statute that a person becoming a member of the corporation continues such until the corporation has run its course, unless his membership is sooner terminated by expulsion, or in one of the modes pointed out by section 8. He continues a member although he has sold his shares to the corporation. It is a necessary part of the scheme that membership should continue to exist, in order to exercise the jurisdiction conferred by the statute over every debtor to enforce payment of periodic dues and fines, and to compel a contribution in case of loss. The liquidation of shares referred to in section 10 has reference to the sale of shares provided for in section 11. When such shares are sold to the corporation at a certain discount, they thereby become liquidated; that is, the amount the seller consents to receive as his share in the final distribution becomes fixed and certain. It is the amount of his share at par value, less the discount offered on the sale; and this amount he receives at once, and the shares sold are *ipso facto* extinguished for all purposes, except for computing what are called "profits and losses," in the apportionment of each member's *pro rata* share.

The law permits a member to sell his shares to the corporation, or to any member, or to any other person who may be approved, in such manner and upon such terms as the by-laws shall prescribe. But a member cannot sell his shares twice. He cannot sell first to one person, and then sell the same shares to another. When he has sold to the corporation in liquidation of his shares, he cannot again sell the same shares to another person; and there is no way provided by which he can again

become the holder or owner of the liquidated shares.  As soon as a share is paid for, it becomes extinguished; and it matters not whether it is paid for periodically by a member, or in a gross sum by the corporation out of the funds contributed by its members.    The result is the same,—the share is wiped out of the score; and, when all the shares are paid for, the corporation ceases to exist for all purposes except winding up.

It follows that John McDevitt, after selling nine shares (which were all the shares held by him) to the corporation, could not sell two of the same shares to Dwight D. Root, and the corporation was not obliged to recognize Root as having any rights whatever.

It is claimed by defendants that section 9 of the statute authorizes a member to sell his shares to any person under such conditions as the by-laws provide; and that article 8 of the by-laws, which reads:

" After a member has been awarded a loan, his shares on which he has received a loan are not transferable until security is given and accepted,"—

Prescribes the condition upon which such shares may be transferred; and, as McDevitt's security had been given and accepted, he was at liberty to transfer such shares to Root.  But the by-law is not to be so interpreted.  When a member sells his shares to the corporation, under the provisions of section 12, the transaction is not complete until the security is given and accepted; and the by-law provides that, while the matter is pending, he shall not transfer the shares sold to the corporation.  If his security is rejected, or he fails to give it, he retains the ownership of the shares; but, when it is accepted, he has no further control over them.

It is further claimed that both the articles of association and the by-laws call the money advanced upon the

sales of shares by a member to the corporation a "loan;" and, if a loan, then the title to the shares remains in the borrower, and he has the right to sell them, subject to the mortgage.

There is no doubt but the articles and by-laws do confound the money paid in advance by the corporation in full of the shares with the idea of a loan to the member by the corporation; and some courts recognize the transaction as a loan. *Pfeister v. Association*, 19 W. Va. 676; *Mills v. Association*, 75 N. C. 292; *Association v. Graham*, 7 Neb. 181; *Martin v. Association*, 2 Cold. 418; *Gordon v. Association*, 12 Bush, 110; *Association v. Lake*, 69 Ala. 456 (1 Amer. & Eng. Corp. Cas. 418).

It makes but little difference, however, what it is called, as our statute treats it as a sale of the shares, subject to the payment by the seller of the regular periodical dues, and the payment by him of such additional periodic sums, not exceeding the rate of 7 per cent. per annum on the nominal amount of the shares, as may be prescribed by the by-laws.   Security for the payment of these periodic sums must be taken upon unincumbered real estate worth not less than twice the amount depending upon such security, upon bond and mortgage duly executed and acknowledged, or upon shares in said corporation, upon estimates according to the dues actually paid in, or upon both such real estate security and such shares.   Neither the word " borrower" nor the word "loan" is mentioned in the statute.   On the contrary, the transaction is called a "sale," and the members are divided into two classes, denominated "selling" and "non-selling" members.

Every member of the association, from the moment he joins, becomes a debtor to the corporation, and every member remains a debtor until the full amount of the

shares for which he subscribed or became the holder of is paid.    No new relation is created by the operation of selling shares to the corporation.    Some rights are relinquished, as his right to the control of the shares; and, if the sale is of the entire shares held by him, the right to vote is gone, but he remains both a member and a debtor for the amount unpaid on his shares, with the increased obligation of paying interest thereon.    If it is a loan of money, then by paying the amount borrowed, and interest, he would be entitled to redeem the shares, and again become the owner and holder thereof.    But this he cannot do, for the shares are extinguished by payment, and nothing remains to redeem.

The testimony shows that Root paid nothing for the shares transferred to him, and that the object of the transfer was to create Root an additional member of the association, with a view of obtaining his assistance to bring forward an investigation into the affairs of the corporation, and institute some reforms in its management.

So far as investigation was concerned, it was not necessary; for section 19 of the statute provides that every member and creditor of such corporation, whose just claim exceeds $25, shall at all reasonable times be allowed to inspect the records and securities of the corporation; and, so far as correcting abuses of the officers in voting salaries, it was alike unnecessary, as such vote for payment of salaries was void.

As the corporation was not obliged to receive or recognize a tender made by or on behalf of Mr. Root, it follows that Mr. McDevitt was in arrear; and, by the terms of the mortgage and the by-laws, the corporation was authorized to proceed to foreclose.

The decree of the court below will be affirmed, with

costs, and the sale will be made, unless the decree and all costs are paid within three months from the entry of decree in this Court. The transcript will be remanded for execution of the decree in the court below.

The other Justices concurred.