CASE 58—PETITION ORDINARY—FEBRUARY 4.

## Hahn vs. Pindell.

## Hahn vs. Warren.

3b 189
91 302

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. "The bank may deal in the loaning of money, exchange, promissory notes, and other evidences of debt; take personal and other securities for the payment thereof, and dispose of the latter as may be agreed upon, *in all respects as natural persons may do under the common law.*" The above enactment in the charter of the Falls City Tobacco Bank, restores to said bank the common law right, without the intervention of a court of equity, to sell mortgaged property, in execution of a power given in the mortgage, and so far, abrogates the Kentucky statute of 1820, requiring a decretal sale.

2. The Falls City Tobacco Bank is authorized by its charter, to loan money on the security of a mortgage of real estate, reserving a power to sell and convey the title in default of payment, unencumbered by any equity of redemption, and undelayed by any suit for foreclosure; and sales and conveyances so made by said bank, in pursuance of the power reserved in the mortgage, are held to be valid.

A. HARRIS,                                      For Appellant,
                        CITED—

1 *Hilliard*, 383 ; 4 *Kent*, 146.

*Act of* 1820, 2 *Stanton, p.* 230.

3 *Marshall*, 489 ; 2 *Dana*, 345.

5 *Ves.*, 681, 678 ; 13 *Ves.*, 601 ; 10 *Ves.*, 423.

6 *Ves.*, 629 ; 8 *Ves.*, 348 ; 3 *Ves.*, 740.

3 *Mer.*, 200.

PINDELL,                                        For Appellees.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

The charter of the "*Falls City Bank,*" in Louisville, afterwards changed to the "*Falls City Tobacco Bank,*"

contains the following provision : " The bank may deal in the loaning of money, exchange, promissory notes, and other evidences of debt; take personal and other securities for the payment thereof, and dispose of the latter as may be agreed upon, in all respects as natural persons may do under the common law."

The inevitable effect of the literal import of that legislative enactment is to restore the common law right, without the intervention of a court of equity, to sell mortgaged property in execution of a power given in the mortgage, and so far to abrogate the Kentucky statute of 1820, requiring a decretal sale. And we see no reason for presuming that the Legislature did not intend all it said, or did not understand the obvious import and effect of the words it used. Were extraneous aid necessary for preventing any such assumption, cotemporaneous legislation of the same kind concerning other and similar institutions would conclusively repel all imputation of haste, imposture, or inadvertence in the foregoing provision.

The charters of the " *Augusta Deposit Bank*," of the " *Greenup Deposit Bank*," and of the " *Washington Bank*," all granted at the same session, contain the same provision in the same language ; and subsequent enactments, applying to all State and National banks in Kentucky, and to certain railroad companies, authorize the sale of personal property, pledged with express power to sell " in such manner and on such terms as the parties may agree in writing, either at the time of making the pledge or afterward." And it is believed that the common law allowing a sale of any mortgaged estate, according to the contract expressed in the mortgage, and without the delay and expense of a suit in equity for a decree of foreclosure and sale, is

now substantially the law of all the States in the Union, except Kentucky and Indiana.

Kentucky has hitherto adhered to the policy of the act of 1820, with the exception only of banks of discount and loan and certain railroads, as before suggested. And the presumed reason for those exceptions may be, that the restoration of the common law will facilitate and secure prudent loans, give more stability to fiscal operations, and relieve many persons from entanglement and loss, and sometimes ruin, as sureties for their unfortunate and improvident friends. However this may be, Kentucky, unwilling to repeal, altogether, the act of 1820, has, nevertheless, seen fit to relax its policy, and circumscribe its operation to the extent already indicated; and it is the duty of her judiciary to respect her policy and uphold her will, so far as she has modified the statute of 1820, as well as so far as she has chosen to adhere to it.

There can be no judicial doubt that the common law legalized fair sales of mortgaged property, either real or personal, when made according to power to sell reserved in the mortgage. And it is historically true that such powers are the most prevalent in the most commercial cities and countries of the world.

In the fourth volume of his Commentaries (*page* 146), Kent says: " It is *usual* to add to the mortgage a power of sale in case of default, which enables the mortgagee to obtain relief in a prompt and easy manner, without the expense, trouble, formality, and delay of foreclosure by bill in equity. These powers are found in England, and are gaining ground very fast upon the mode of foreclosure by process in chancery."

And this is recognized as the common law by a resistless current of concurrent authorities, both British and American.

To restore the common law in this respect, and so far repeal the statute of 1820, was the plain purpose of the provision, as before quoted, of the charter of the "Falls City Tobacco Bank." The *proviso* in the fifth section of the charter does not affect this conclusion. After authorizing the bank to own and convey real estate, that section adds: " and they may make such by-laws for their government as they may deem necessary: *Provided*, The same be not contrary to the Constitution and laws of the State or of the United States." This proviso applies only to the immediate antecedent, that is, the enactment of by-laws; for neither collocation, reason, punctuation, nor good grammar, would extend it to any other portion of the section.

For these reasons, it seems quite clear to us that the law authorized the "Falls City Tobacco Bank" to loan money on the security of a mortgage on real estate, reserving a power to sell and convey the title, in default of payment, unencumbered by any equity of redemption, and undelayed by any suit for foreclosure.

In this case the appellant, for securing prompt payment of money which he borrowed from the bank, mortgaged certain real estate in the city of Louisville, empowering the mortgagee to sell, through an auctioneer, on specified notice, in the event of defalcation, and authorizing the *mortgagee to bid and buy at such sale.*

The money not being paid, an auctioneer, chosen by mortgagor and mortgagee, made, on the prescribed notice, an apparently fair and regular sale, at which a portion of the mortgaged property was bought by the appellee, Pindell, as agent of the mortgagee, and the residue was bought by the appellee, Warren, in his own right. The sales were consummated by a conveyance of the legal title by the mortgagee to each vendee of the portion bought by him.

The appellant refusing to surrender, those purchasers brought separate actions to recover the possession of what he had bought; and, on the trial, each of them obtained a judgment of eviction; and by this appeal the appellant seeks a reversal of each of those judgments.

There is no complaint of unfairness, irregularity, or sacrifice in the sales. Then, according to the charter, as already interpreted, the sale being valid, and the legal title having passed, no ground remains for the reversal of either of the judgments, unless Pindell's purchase was constructively fraudulent, and we cannot adjudge that it was so. Had the mortgagee purchased the equity of redemption from the mortgagor by a contract privately made between them, and if the law might, *prima facie*, assume that it was fraudulent until the purchaser had shown that it was fair and for a just and commensurable consideration, still this is an essentially different case; and even if it were not, the fairness of the sale and adequacy of the consideration are sufficiently established in this case, and that would be enough to relieve the sale of the possible imputation of fraud. But, moreover, the authority given by the mortgage to the bank to purchase at a public sale estopped the appellant from denying it or impeaching the sale for constructive fraud.

We conclude, therefore, that the judgment in Pindell's favor was right, and *a fortiori*, the judgment in Warren's favor was right; and, as the cases were consolidated in the argument, this opinion disposes of both by an affirmance of each of the judgments hereby adjudged.