JUDGE COFER
delivered the opinion oe the court.
“The Winchester Building and Accumulating Fund Association,” a corporation created by an act of the general assembly of this state (1 Session Acts, 1873, p. 240), brought this action in the Clark County Court of Common Pleas upon a note for $1,320, given to said association by the appellants, and due twelve months after date.
The appellants answered, among other things, that neither of them was or ever had been a member of the association, and that one of them, at the date of the note, borrowed of the association $1,140, interest upon which, at ten per cent per annum, was included in the note; and that, in addition to interest at that rate, there was also embraced in the note the, sum of $66, demanded and charged by way of premium on the loan. This latter sum, they alleged, was usury, and they sought to avoid so much of the note.
A demurrer to that part of the answer was sustained ,• and another issue presented having been found against the appellants, and judgment rendered for the full amount of the note, they prosecute this appeal, and insist that the court erred in sustaining the demurrer to so much of their answer as alleged that there was usury embraced in the note.
The note bears date Dee. 20, 1873, and appellee’s charter was approved Feb. 17, 1873.
The first section of an act approved March 14, 1871, and commonly called the conventional interest law, provided that it should be lawful for all persons to contract, by memorandum in writing, signed by the party or parties chargeable thereon, to pay or receive any rate of interest for the loan or forbearance of money which might be agreed upon by the parties to such contract, not exceeding $10 upon $100 for a year, and *112 at the same rate for a greater or less sum and for a longer or shorter time. Section 5 of that act provided that if any rate of interest exceeding the rate authorized by the first section was charged, the whole interest should be forfeited
The provisions of these sections were incorporated into the General Statutes without material alteration (except that under the General Statutes the whole interest is not forfeited, unless more than lawful interest is intentionally charged), so that, from a period anterior to the granting of the appellee’s charter up to this time,.the general'law has prohibited the charging of more than at the rate of ten per cent per annum for the loan or forbearance of money.
It is therefore clear, upon the facts stated in the answer, that, tested by the general law, the note contains usury, and the interest exceeding six per cent has been forfeited, and that the demurrer should have been overruled.
But the appellee’s charter contains a provision which, if constitutional, will take the contract in this case out of the operation of the provisions of the General Statutes, and relieve it from the taint of usury.
Section 5 of the charter reads as follows, viz.: “ The object of said association being to enable its members, by their savings and accumulations, to acquire homes and other property, its business shall be to loan its capital stock as paid in and the accumulations thereof upon such security as may be required by the president and directors, preference being given in all cases to the members of said association; and said loans shall be made at such rate of interest as may be agreed upon by the parties thereto, together with such premiums therefor as may be offered by the parties to whom the loans may be made.”
Appellants’ counsel insists that that portion of the section supra which we have placed in italics is unconstitutional, and whether he is correct in this is the only question in this case.
As the rate of interest which might be lawfully contracted *113 for has all the while been prescribed by a general law, and all persons have been prohibited, under a penalty of the forfeiture of all interest, from charging a greater rate than ten per cent per annum, the question is, had the general assembly power, under the constitution, by a special act, not only to relieve the appellee against the penalty imposed upon all others for exceeding the prescribed rate, but also to empower it to enforce its contracts for more than the rate others were permitted to charge?
That the appellee is a corporation can not affect the decision of this question. It will not be contended that the legislature has power to confer upon a corporation privileges or to grant to it exemptions which it can not constitutionally confer upon or grant to a natural person.
Nor will it be claimed that a premium in excess of lawful interest, exacted as an inducement to make a loan of money, is not to be deemed usury under the general law upon the subject.
The question is then to be decided as if the legislature had by a special act undertaken to authorize a natural person named in the act to charge and collect a greater rate of interest than was permitted by the general law, and to relieve such person from the penalty denounced against all others for charging a higher rate of interest than is allowed by law.
It seems to us that a bare statement of the question is all that is necessary to its decision.
It is our boast that under our government none are entitled to exclusive rights, but that all are governed by equal laws, subject to like burdens, and entitled to equal privileges. Yet if that portion of appellee’s charter under consideration is a legitimate exercise of legislative power, that equality which has been supposed to exist is enjoyed by sufferance at the will of the legislature, and is not secured as a right by the fundamental law.
The first section of the Bill of Rights incorporated into the constitution declares “that all freemen, when they form a *114 social compact, are equal, and that no man, or set of men, are entitled to exclusive, separate public emoluments or privileges from the community, but in consideration of public services.”
The appellee has not undertaken to render any public services, and is not bound to render any, and by an express provision of its charter is bound in making loans to give preference to its shareholders.
There are unquestionably cases in which the state may grant privileges to specified individuals without violating any constitutional provision, because, from the nature of the case, it is impossible that they should be possessed and enjoyed by all; and if it is important that they should exist, the proper state authority must be left to select the grantee. (Cooley’s Const. Lim., p. 394.)
But in all such cases the person, whether natural or artificial, to whom the privilege is granted is bound, upon accepting it, to render to the public that service the performance of which was the inducement to the grant; and it is because of such obligation to render service to the public that the legislature has power to make the grant.
Permission to keep a tavern or a ferry, to erect a toll-bridge over a stream where it is crossed by a public highway, to build a mill-dam across a navigable stream, and the like, are special privileges, and, being matters in which the public have an interest, may be granted by the legislature to individuals or corporations; but the grantee, upon accepting the grant, at once becomes bound to render that service to secure which the grant was made; and such obligation on the part of the grantee is just as necessary to the validity of a legislative grant of an exclusive privilege as a consideration, either good or valuable, is to the validity of an ordinary contract.
Whenever, by accepting such privilege, the grantee becomes bound by an express or implied undertaking to render service to the public, such undertaking will uphold the grant, no matter *115 how inadequate it may be; for the legislature being vested with power to make grants of that character when the public convenience demands it, the legislative judgment is conclusive, both as to the necessity for making the grant and the amount of service to be rendered in consideration therefor, and the courts have no power to interfere, however inadequate the consideration or unreasonable the grant may appear to them to be. But when they can see that. the grantee of an exclusive privilege has come under no obligation whatever to serve the public in any matter in any way connected with the enjoyment of the grant, it is their duty to pronounce the grant void, as contravening that provision of the Bill of Rights which prohibits the granting of exclusive privileges except in consideration of public services.
Incorporated banks are established for the convenience and accommodation of the public, and there are certain services which they are bound to perform for the public and for individuals when called on for the purpose, and the obligation to perform such services is an equivalent deemed sufficient by the legislature for the privileges granted.
But, as already remarked, the appellee is not bound to render any service whatever to the public or to any member of the community, but is required by -its charter to prefer its own shareholders over all others.
Upon what principle, then, shall it enjoy the privilege of charging a greater rate of interest for its loans than any other citizen is permitted to charge, or be exempt from the penalty imposed on all others?
If the legislature may constitutionally confer such privileges and exemptions upon one citizen, then it may confer the like privileges and exemptions upon one or five in each county in the state, and thereby create a privileged class in every community, to grow7 and fatten by practices in which all others are prohibited, under penalty, from engaging. -
*116 We have been unable to find any direct authorities upon this subject; but it seems to us so free from doubt or uncertainty that we can not hesitate to hold that that part of the charter in question is unconstitutional, and that the court erred in sustaining the demurrer.
Judgment reversed, and cause remanded with directions to overrule the demurrer, and for further proceedings.