Kentucky Trust Company, of Louisville, v. Lewis.

| 5r | 579 |
| 83 | 449 |
| 84 | 120 |
| 82 | 579 |
| 91 | 302 |
| 82 | 579 |
| 92 | 239 |

CASE 92—CONSTITUTION—FEBRUARY 7, 1885.

# Kentucky Trust Company, of Louisville, v. Lewis.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. An act conferring upon a company the power to sell land in the foreclosure of mortgages, without the intervention of a court, the company having performed no public service to the State, is unconstitutional and void.

2. Such legislation is contrary to our fundamental laws and all equality of right. It is legislation for a class and can not be maintained.

BEATTIE & WINCHESTER FOR APPELLANT.

1. The constitutionality of this charter does not seem to us to be open to question, both because similar grants have been sustained, and because the charter can be maintained upon principle and authority.

2. Whatever the words ·· exclusive separate public emoluments.'' or the words " exclusive separate public privilege " may mean, they certainly do not include the character of grant we have in this case. (Beard v. Smith, 6 Mon . 500; Hahn v. Pindell, 3 Bush, 189; Patterson v. Trabue, 3 J. J. Mar., 598; 4 Mon., 91; 1 Dana, 232; 5 Bush, 681; 8 Ib., 451; 12 Ib., 110.)

.ANDERSON & BRUCE FOR APPELLEE.

So much of appellant's charter as attempts to confer upon them the power to sell upon notice, without the intervention of a court, lands held by . it as security for loans, and to convey to the vendee without joining the maker of the deed, is unconstitutional and void. (Constitution, article 13, section 1; Ib., section 28; General Statutes, chapter 13, section 22; 12 Bush, 110; Citizens' Gas Co. v. Louisville Gas Co., 81 Ky., 263; Smith v. Warden, 608; 2 Yerger, 554; 11 Mass., 396.)

. JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The act of the Legislature incorporating the appellant, the Kentucky Trust Company, of Louisville, Kentucky, provides that it may "deal in the loaning of money, exchange, promissory notes and other evi-

dences of debt, take personal and other securities for the payment thereof, *and dispose of the latter as may be agreed upon, in all respects as natural persons may do under the common law.* * * * * * The said company may negotiate loans of money, and may purchase, sell and manage property, real, personal and mixed, including stocks, bonds, bills, notes and other choses in action and evidences of debt, and may collect and adjust and settle the same for or on account of others, and may guarantee the payment of loans negotiated through it. In all matters committed or intrusted to its care, and with respect to loans made by it for or on account of others, it may, in case of default in or the non-payment of such loans or indebtedness, exercise all the powers herein granted to it, with respect to securities for loans made by it, *in the same manner* as if such loans were made in its own right."

This appeal involves the power of the corporation, by virtue of the above provisions, to sell and convey real estate conveyed by deed of trust or mortgage to it, to secure either its own debt or one made by it for another without the intervention of a court, or the maker of the deed of trust or mortgage joining in the conveyance.

By the act of February 11, 1820, 1 M. & B., 449, and which has, in substance, remained the law ever since (General Statutes, chapter 63, article 1, section 22), it was enacted, "that no sale hereafter made by any trustee or trustees under or by virtue of any deed of trust or pledge of any estate whatever, shall be good or valid; nor shall any conveyance made by any

ꞏtrustee or trustees pass the title or interest of any ꞏestate or property in any such deed ꞏmentioned, unless ꞏsuch sale shall be previously ordered or decreed by a ꞏꞏcourt of chancery upon bill filed and proceedings had thereon, as in the case of mortgages, unless the maker or makers of any such deed or pledge shall join in the ꞏꞏdeed or writing evidencing such sale or transfer."

No doubt the Legislature intended to repeal this ꞏgeneral law as to the appellant, the Trust Company, by giving it the power to dispose of real securities ꞏꞏas might "be agreed upon, in ꞏall respects as natural persons may do under the common law."

The existence of this intention is further shown by ꞏꞏa similar provision in the charters of various other ꞏcorporations; and if there be a doubt as to the constitutionality of the law, it should be resolved in its ꞏfavor.

It is claimed for it that it is but one of the many ꞏlegislative acts giving *exceptional* but not *exclusive* privileges, and that such legislation is not forbidden ꞏby our State Constitution; that it contains no words ꞏof exclusion, and that the like privilege may be ꞏꞏgranted by the Legislature to any other corporation ꞏor person.

The general law above cited, however, affords the ꞏexclusion; and, although the act in question does not forbid the granting of the same power to others, yet, if the legislative will were to extend the privilege to ꞏothers, and not to all, it would but create a privileged ꞏꞏclass.

In the case of Gordon, &c., v. Winchester Building ꞏAssociation, 12 Bush, 110, it was held by this court

that the privilege of charging a greater rate of interest than is permitted by the general law can not be constitutionally conferred upon a corporation.

If it can not be done as to one, it can not be done as to twenty; and if the latter number can constitutionally be granted the privilege now claimed, then a like number of persons or corporations may be given the power to charge a higher rate of interest than is allowed by the general law, or the same number may be given the exclusive right to manufacture cottons, with the reservation to the Legislature of adding to such privileged class.

It is said by Judge Cooley that "the Legislature may suspend the operation of the general laws of the State, but when it does so, the suspension must be general, and can not be made for individual cases or for particular localities." (Cooley's Con. Lim., side page 391.)

The aim of the law should be equality of rights and privileges, affording "one rule for rich and poor, for the favorite at court and the countryman at plow."

It was therefore held in Lewis v. Webb, 3 Greenleaf, 326, that the Legislature could not authorize an appeal in a special case in violation of the general law; in Durkee v. Zanesville, 28 Wisconsin, 464, that a party could not be exempted from the payment of costs; in Holden v. James, 11 Mass., 396, that the statute of limitations could not be suspended in a particular case; and in Smith v. Warden, 4 Ky. Law Rep., 553, that an act extending the time for an officer to distrain for his fee bills, beyond that allowed by the general law, was unconstitutional.

It can not be claimed that the grant of privilege now

in question is valid upon the ground that it interferes with the rights of no other person, because it reverses the attitude of the parties and compels the person whose property has been sold to become a plaintiff if he desires to question the validity of the debt under which the sale has been made. Neither does it relate exclusively to the property of the Trust Company, and, therefore, affords no opportunity to do injury to others.

The serious objection, however, to it is, that it is *unequal* and *partial* legislation; it is exclusive in its character; it favors the interest of one or a few by affording them a particular remedy, while the many are governed by the general law which denies it. It grants a mode of doing business which the law does not give to the public; and the recipient of this partial legislation is a corporation devoted to private enterprise and ends, rendering no public service, and under no obligation to do so, as is the case with a railroad or a turnpike company or a ferry. It is not even doing business as a bank, because by its charter it is not authorized to do so until it has a paid-up capital of $100,000; and hence the power in question can not be claimed for it upon the ground that, as a bank, it is bound to perform any services for the public, even if this be true of an incorporated bank. It is purely partial or class legislation as to the ordinary business of life, and, as such, is at war with the genius of our institutions, which impose equal burdens and confer equal privileges.

The grant, with an exclusive privilege of a right or franchise of a public character, and appertaining to government, as in the case of a turnpike or a ferry, differs widely from one relating to the ordinary avoca-

tions of life and the exercise of which pertains solely
to the individual; and when a grant of the latter affects
the individual rights of others, or affords remedies do-
ing so, we have one law for the individual or a favored
few, and another for the mass of the people.

Such legislation is, beyond doubt, contrary to our
fundamental law and at war with all equality of right;
and we do not hesitate, therefore, to decide that the
Legislature, by the attempted gift of such a power,
passed beyond its constitutional limit.

We are aware that the views herein expressed are not
in accord with the case of Hahn v. Pindell, 3 Bush, 189.
In that case, a clause in the charter of the Falls City
Bank, of Louisville, similar to the one now in question,
was considered, but more in the light of its policy, and
whether the Legislature intended by it to repeal the act
of 1820, than in a constitutional view; indeed, the ques-
tion of its constitutionality does not seem to have been
raised, but, in so far as it may be considered as holding
the grant of such a privilege valid, it is overruled, and
the judgment below is affirmed.