Schoolcraft's Adm'r v. Louisville & Nashville Railroad Co.

CASE 45—PETITION ORDINARY—November 10.

# Schoolcraft's Adm'r v. Louisville & Nashville Railroad Company.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

92   233
e127  191
f127  286

1. PARTIAL LEGISLATION — DISCRIMINATION AGAINST RAILROADS.— While partial legislation is in violation of both the Federal and the State Constitution, the mere fact that a law is special in its character, in that it applies to a particular class of persons to the exclusion of all other classes, does not render it unconstitutional, provided all persons are treated alike under similar circumstances and conditions.

2. SAME.—As the business of operating a railroad is attended by peculiar dangers, and persons engaged in that business possess some rights not generally enjoyed by others, such persons should be regarded as a separate and distinct class, and a law may be made to apply to them as a class, although it does not apply to persons engaged in any other business.   Therefore, section 1 of chapter 57 of the General Statutes, which gives a right of action against the proprietors of railroads for the loss of life by their negligence, is not unconstitutional.

3. A Corporation is "a Person" within the meaning of the Fourteenth Amendment to the Constitution of the United States, and no State can deny to any corporation the equal protection of the laws. And corporations are also embraced by the Kentucky Bill of Rights, which guarantees to all persons equal rights under the law. But these constitutional provisions do not affect the police power of the State, which extends to all matters necessary to the protection of the health, morals and safety of the public.

4. Negligence—Election.—While the character of neglect alleged must determine whether a recovery is sought under section 1 or section 3 of chapter 57 of the General Statutes, yet where the plaintiff is required to elect whether he will proceed under section 1 or section 3, and he elects to proceed under section 1, and the issue is fully made as an action under that section, it will be so treated, although willful neglect is alleged, the facts alleged being sufficient to show negligence. And this is true, although the court after the election refused to strike out of the petition the averments as to willful neglect.

HARGIS & EASTIN, COPELAND & GOLDEN for appellant.

Section 3 of chapter 57 of the General Statutes is not unconstitutional. (Board of Int. Imp. v. Scearce, 2 Duv., 578; Pierce on Railroads, pp. 40–42.)

LYTTLETON COOKE for appellee.

1. The degree of neglect alleged determines whether the action is brought under the first or third section of chapter 57, General Statutes; and as the allegations of willful negligence still stand in the petition in this case, this must be treated as an action under the third section, and as plaintiff's intestate left neither widow nor child the action can not be maintained. (Henderson's Adm'r v. Ky. Cent. R. Co., 86 Ky., 389; Jordan's Adm'r v. Cincinnati, &c., R. Co., 89 Ky., 40; Givens' Adm'r v. Ky. Cent. R. Co., 89 Ky., 231.)

2. Even if this can be regarded as an action under section 1 of chapter 57, General Statutes, it can not be maintained as that statute is unconstitutional and void, being repugnant to both the State and Federal Constitutions.

In respect to the Constitution of Kentucky: (Gordon v. Winchester, &c., 12 Bush, 110; Smith v. Warden, 80 Ky., 608; Citizens' Gas Co. v. Louisville Gas Light Co., 81 Ky., 270; Kentucky Trust Company v. Lewis, 82 Ky., 579; Henderson's Adm'r v. Kentucky Central Railroad Co., 86 Ky., 389; Kentucky Central Railroad Co. v. McGinty, 9 Ky. Law Rep., 860; Jordan's Adm'r v. C., N. O. & T. P. R. Co., 89 Ky., 40; Given's Adm'r v. C., N. O. & T. P. R. Co., 89 Ky., 231; Henderson Building, &c., Association v. Johnson, 10 Ky. Law Rep., 833; Henderson Building, &c., Association v. Zeiler, 11 Ky. Law Rep., 702; Henning v. Louisville

Leather Co., 11 Ky. Law Rep., 544; C., N. O. & T. P. R. Co. v. Clark & Hennet, 11 Ky. Law Rep., 286; German Insurance Co. v. Miller, 12 Ky. Law Rep., 138; Daniel v. Trustees of Richmond, 78 Ky., 542; Fechheimer Bros. v. City of Louisville, 84 Ky., 306; Dawson v. Lee, 83 Ky., 49; Barbour v. Louisville Board of Trade, 82 Ky., 645; Morawetz on Corporations, section 1; Civil Code of Practice, section 732.)

In respect to the Constitution of the United States—The Fourteenth Amendment : (Santa Clara County v. Southern Pacific Railroad Company, 118 U. S., 396; Pembina Mining Co. v. Pennsylvania, 125 U. S., 181; Minneapolis, &c., Ry. Co. v. Beckwith, 129 U. S., 26; Davidson v. New Orleans, 95 U. S., 97; Murray, &c., v. Hoboken, &c., 18 Howard, 276; Ex Parte Virginia, 100 U. S., 367; Missouri v. Lewis, 101 U. S., 22; Soon Hing v. Crowley, 113 U. S., 703; San Mateo County v. Southern Pacific Railroad Company, 8 American and English Railroad Cases, 1; Santa Clara County v. Southern Pacific Railroad Company, 13 American and English Railroad Cases, 182; San Bernardino County v. Southern Pacific Railroad Company, 118 U. S., 422; Barbier v. Connolly, 113 U. S., 27; Chy Lung v. Freeman, 92 U. S., 275; People v. Compagne Generale, &c., 107 U. S., 59; Henderson v. Mayor of New York, 92 U. S., 259; Railroad Company v. Husen, 95 U. S., 465.)

In respect to General Constitutional Principles : (Cooley's Constitutional Limitations, 483–486; Wally's heirs v. Kennedy, 2 Yerger, 554; Smith v. Louisville & Nashville Railroad Company, 75 Ala., 449; Brown v. Alabama, &c., Railroad Company, 6 So. Rep., 295; Wilder v. C. & W. M. Ry. Co., 38 N. W. Rep., 289; Park v. Detroit Free Press Company, 40 N. W. Rep., 731; State v. Staten, 6 Coldwell, 234; Ervine's appeal, 16 Penn. State, 256; Parsons v. Russell, 11 Michigan, 229; Zeigler v. South & North Alabama Railroad Company, 58 Ala., 598.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

James Schoolcraft, while at work for the Standard Oil Company upon a switch belonging to it, but which was connected with the appellee's road, was struck by a car which was suddenly put in motion by a car being backed by those in charge of it for the appellee from its road on to the switch, and so injured that he died in a short time. The petition avers that the injury was the result of *willful* neglect upon the part of those in charge of appellee's car.  It also sets forth fully the manner of the injury.

Section 3, chapter 57 of the General Statutes gives a right of action to the widow, heirs or personal representative of the deceased, if the life be lost by the *willful* neglect of any person, company or corporation, their agents or servants, and in such a case punitive damages may be recovered.

Section 1 of the same chapter provides: " If the life of any person not in the employment of a railroad company shall be lost in this Commonwealth, by reason of the negligence or carelessness of the proprietor or proprietors of any railroad, or by the unfitness or negligence or carelessness of their servants or agents, the personal representative of the person whose life is so lost may institute suit and recover damages in the same manner that the person himself might have done for any injury where death did not ensue."

Section 3, as construed by this court, only gives a right of action if the deceased leaves a widow or child. Because this was not averred a demurrer was presented to the petition, but overruled. The appellee then asked that the appellant be compelled to elect whether it would prosecute the action under the first or third section of the statute; and being required over its objection to do so, it elected to proceed under the first; and, thereupon, the appellee filed its answer. It, *inter alia*, sets up that the deceased left no widow or child; denies that his death resulted from neglect of any character upon its part, and avers that it was caused by his own negligence.

A demurrer to the first defense was overruled, notwithstanding the appellant had been compelled to, and had elected to proceed under section 1 of the statute. The appellant then filed its reply. A demurrer was presented

to it, the grounds being first, that it did not deny the deceased left no widow or child; and second, that the action could not be maintained under section 1, because it violates both the State and United States Constitution. At this stage of the proceedings the case was transferred from the Court of Common Pleas to the Louisville Law and Equity Court, and the latter carried the demurrer to the reply back to the petition, and sustained it to it upon the ground that the first section of the statute is unconstitutional. The appellant failing to plead further the action was dismissed, and it has appealed.

It is urged first, that the action of the lower court must be sustained because the suit was in fact brought under the third section of the statute. The character of neglect alleged must determine whether a recovery is sought under the one, or the other section; that is, if the proceeding be under the third section, the neglect must be averred to have been *willful*, because it is the creature of the statute; but if under the first, then it is sufficient to aver the injury resulted from negligence, or to state facts showing it. (Givens v. Kentucky Cent. R. Co. 89 Ky., 231.)

Here, however, while *willful* neglect was averred, yet the circumstances of the injury were fully stated, showing negligence, if truly set out; and the appellee, by its own motion, compelled the appellant to elect to proceed under the first section of the statute. Moreover, the appellee in its answer denied that the injury resulted from neglect of *any* character upon its part, and pleaded the negligence of the deceased as the cause of it, which is not available in a case where death results from the *willful* neglect of the defendant. The issue was, therefore, fully made up as an action under the first section.

The fact that the court, after the election had been made, refused to strike out of the petition the averments relating to *willful* neglect can not cause the party to be regarded as prosecuting an action of a character different from that fixed by the election, and which could be maintained upon the petition, as it fully set forth the manner of the injury, and showed, according to the facts stated, that it was the result of negligence.

It is urged with great ingenuity and ability, however, that the first section of the statute is unconstitutional; that it is in violation of the Fourteenth Amendment to the Constitution of the United States, which forbids a State denying to " any person " within its jurisdiction the equal protection of the laws; and that it also contravenes those provisions of our State Bill of Rights, which guarantee equal rights to all persons under the law, and the impartial administration of justice.

It is said that it makes two discriminations; first, that it authorizes an action against railroads alone, instead of against all persons; and second, that it gives a right of action as against a railroad to all persons, save those in its employ.

The appellee will not, however, be heard to complain upon the latter ground. It has no interest in that question. Indeed, the exception is for its benefit. (Cooley's Con. Lim., side page 163.)

It is well settled that a corporation is " *a person* " within the meaning of the Fourteenth Amendment to the United States Constitution; that it is entitled to the equal protection of the laws, and that no State can, to any extent, deny it. (Santa Clara County v. South. P. Railroad, 118 U. S., 396; Pembina Mining Company v.

Pennsylvania, 125 U. S., 181.) But this Constitutional provision does not affect the police power of the State, which is to be exercised for the protection and safety of its citizens. It was not the purpose of the Constitution to disarm the state of the power to guard the public safety. It is true also that corporations are embraced by the provisions of our State Bill of Rights, to which we have alluded. It will be noticed, however, that the statute in question does not give a right of action merely against railroad corporations; but it applies to each proprietor of a railroad, whether operated by an individual, partnership or corporation. It applies not merely to corporations operating railroads, but to all persons operating them. It is, therefore, unlike the case of Gordon v. Winchester Building Association, 12 Bush, 110, where it was attempted to give to one corporation the right to charge a greater rate of interest than the general law allowed; or Smith v. Warden, 80 Ky., 608, where one officer was given time to distrain for his fees, regardless of the general limitation law, which applied to all other officers; or the Kentucky Trust Company v. Lewis, 82 Ky., 579, where a legislative act sought to confer upon one particular corporation the right to sell land mortgaged to it, or held by it in trust, without the intervention of a court.

Upon the other hand, the case of the Board of Int. Imp. Shelby Co. v. Scearce, 2 Duvall, 576, is not, as is claimed by the appellant, decisive of this case. It involved the constitutionality of the third section of the statute. It was urged that the charter of the company was a contract, and that the third section of the statute impaired its obligation by making the corporation liable,

where it was not so by its charter and the contemporaneous law; but this claim was denied.

It has been so often said that the law should always aim at equal rights and privileges; that it should afford the same rule for the rich and the poor, the high and the low, that it would not bear repetition but for the importance of its being always observed.

Undoubtedly, partial legislation is inimical to justice and free government. The same burden should be imposed upon all under the like circumstances. The Legislature can not, for instance, impose a different or additional penalty upon one litigant, in case of failure, from what it does upon all other litigants. It can not select a particular individual from a class or a locality, and subject him to special burdens or peculiar rules different from those imposed upon others of the same class or same locality.

If, however, legislation like that now in question can not be upheld as constitutional, then much necessary legislation, and which is vital to the interests and safety of the public, must fail. The police power of a State certainly extends to all matters necessary to the protection of the health, morals and safety of the public.

The conduct of railroads is a highly dangerous business. More people are brought in contact with it than with any other dangerous agency. While necessary to the business of the country, and entitled to a proper protection under the law, yet its control by the law is highly essential to the safety and protection of the public, because so many persons come within reach of injury from it. In fact, this control is at this time, when railroad transportation is almost the wonder of the day, absolutely necessary to the safety and well being of the pub-

lic; and if those operating railroads can not be made subject to laws relating specially to them then the safety and rights of others will be largely at their mercy.

If, however, a law like this one, which meets a particular and public necessity, can not be upheld as falling within the exercise of the police power, yet there is another ground upon which, to our minds, it can clearly rest. As already said, this statute does not single out a particular individual or corporation and subject him or it to special burdens or peculiar rules; nor does it do so as to some of those engaged in a particular business, as, for instance, the Chinese in the laundry business, and which the Supreme Court of the United States condemned in the case of Soon Hing v. Crowley, 113 U. S., 703, but it subjects all in a particular business to its provisions, just as a law relative to banks and the conduct of banking would subject all in that particular business to its terms. Legislation of like character is to be found upon the statute books of every State.

It is said, however, that railroads are but a single kind of common carriers, and that this statute does not include those operating lines of stage coaches, canals, etc. If this argument is to prevail, then legislative power to require railroads to fence their tracks, making them liable for the value, or double value, of all stock injured by their trains, and a variety of kindred legislation, which has been upheld by the courts upon the ground that it is necessary to the public safety, can not be maintained.

It is said, however, that this legislation is by virtue of the police power, as is that requiring railroads to post their rates, number their cars, disuse steam in cities, ring

their bells and blow their whistles at public crossings or in centers of population, under pain of a penalty or liability for injury to persons, yet here we have a business or agency possessing some rights not generally employed by others; one peculiar to itself, and more largely affecting the public than any other; one extremely hazardous and attended by dangers peculiar to it; and from the necessity of the case, if for no other reason, it should be regarded as *sui generis*; that those engaged in it should in law be held to be a separate and distinct class, like bankers, and that a law may be, therefore, made to apply to them generally.

Such a statute affects all similarly situated; it imposes the same burden upon all in the like business, and, therefore affords equal protection. While in the broad sense of the term it is special legislation, yet it is not of such a character as to fall within the constitutional inhibition.

This view, it seems to us, is fully sustained by the case of Missouri Railway Company v. Mackey, 127 U. S., 205, and is also supported by the reasoning in Minneapolis Railway Company v. Beckwith, 129 U. S., 27. The first case relates to a Kansas statute which provides: "Every railroad company organized or doing business in this State shall be liable for all damages done to any employe of such company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employes, to any person sustaining such damage."

It was held that it did not deprive the railroad company of its property without due process of law; that it did not deny to it equal protection of the law, and was

not in violation of the Fourteenth Amendment to the Constitution of the United States.

The court, in its opinion, uses this language : " The objection that the law of 1874 deprives the railroad companies of the equal protection of the laws is even less tenable than the one considered. It seems to rest upon the theory that legislation which is special in its character is necessarily within the constitutional inhibition, but nothing can be further from the fact. The greater part of all legislation is special either in the objects sought to be attained by it or in the extent of its application. Laws for the improvement of municipalities, the opening and widening of particular streets, the introduction of water and gas, and other arrangements for the safety and convenience of their inhabitants, and laws for the irrigation and drainage of particular lands, for the construction of levees, and the bridging of navigable rivers, are instances of this kind. Such legislation does not infringe upon the clause of the Fourteenth Amendment, requiring .equal protection of the laws, because it is special in its character ; if in conflict at all with that clause it must be on other grounds. And when legislation applies to particular bodies or associations, imposing upon them additional liabilities, it is not open to the objection that it denies to them the equal protection of the laws, if all persons brought under its influence are treated alike under the same conditions. A law giving to mechanics a lien on buildings, constructed or repaired by them, for the amount of their work, and a law requiring railroad corporations to erect and maintain fences along their roads, separating them from land of adjoining proprietors so as to keep cattle off their tracks, are instances of this

kind. Such legislation is not obnoxious to the last clause of the Fourteenth Amendment, if all persons subject to it are treated alike under similar circumstances and conditions in respect both of the privileges conferred, and the liabilities imposed."

It seems to us this reasoning is not only correct, but the rule laid down a just one. It is certainly vital to a vast amount of existing necessary legislation, which now not only affords public safety and protects individual right, but some of which protects and advances the interests of the appellee and those similarly interested. Tested by it, the statute in question is constitutional.

The judgment is reversed and cause remanded for further proceedings consistent with this opinion.