# Louisville Ry. Co. v. Louisville Fire & Life Pro. Assn.

(Decided January 21, 1913.)

## Appeal from Jefferson Circuit Court, (Common Pleas, Second Division.)

1. Constitutional Law—Special Privileges Cannot be Granted Except in Consideration of Public Services.—The test to which the right to the enjoyment of special privileges by individuals and private corporations must be subjected, is, do they perform any public service, and are they subject to public control? If they do not render such service and are not subject to such control, a legislative attempt to invest them with privileges or immunities not allowed to the general public is in violation of section 3 of the Constitution, and void.

2. Constitutional Law—Public Services Entitling Individuals to Special Privileges Defined.—The public service that may entitle certain individuals, including private corporations, to privileges and immunities not enjoyed by the public generally, is a public service that carries with it some measure of public control and supervision, and the right of public control and authority must precede or accompany the grant of the privilege and be so much a part of it that the privilege cannot be exercised without incurring the responsibility and liability that attaches to the performance of public duties. In short, the beneficiary in every grant of special privileges must be in some degree the servant of the public, subject to the control and authority of some public agency.

3. Constitutional Law—Agency of Insurance Companies to Protect Property at Fires Does not Perform a Public Service.—A salvage corps, controlled and paid by insurance companies to attend fires and protect property, does not perform a public service entitling it to the use of the streets in preference to other persons, as it is not subject to any measure of public control, and the legislative act giving it this preference violates section 3 of the Constitution.

4. Streets and Highways—Act Authorizing Preference in Their Use Invalid.—All members of the general public, without regard to the place or position they occupy, or the business they are engaged in, are entitled to the equal use and enjoyment of public streets and places. The streets and public places of cities and towns, and the highways of the State, belong to the public, are set apart for public use, and no favoritism or discrimination in this use will be allowed as between private individuals.

HOWARD B. LEE and FAIRLEIGH, STRAUS & FAIRLEIGH, for appellant.

KOHN, BINGHAM, SLOSS & SPINDLE, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

While a street car of the appellant company was lawfully standing on Broadway at the intersection of Third

street in Louisville, Kentucky, it was run into and "hit amidships"—to use the words of Capt. Barney Duffey—by an automobile owned by the appellant, the Louisville Fire & Life Protective Association. At the time of the collision, the automobile, in charge of Capt. Duffey and occupied by employes of the association, was on its way to a fire, and was traveling at a rate of speed variously estimated at from twenty-five to seventy-five miles an hour.

As a result of the collision the automobile was seriously damaged, and this suit was brought by the Association to recover from the street railway company the amount of damage done to the machine. A trial resulted in a verdict and judgment against the railway company, and it prosecutes this appeal.

The right of recovery on the part of the Association is rested on the ground that the automobile had the right of way in the street, and that as the persons in charge of the street-car knew, or, by the exercise of ordinary care, could have known, of the approach of the automobile, they should have moved the car off of the intersection before the automobile reached that point, or have stopped before reaching the intersection, and that the failure to do one of these things was actionable negligence.

The trial court agreed with this view of the rights of the parties and instructed the jury accordingly.

Several grounds of reversal are relied on, but as the controlling decisive question in the case is whether or not the vehicles of the Association have a right to the use of the streets superior to that of other persons rightfully using them, we will confine this opinion to the consideration of this question alone.

The Louisville Fire & Protective Association is a private corporation, owned and controlled by the fire insurance companies doing business in the city of Louisville, and it was created and organized under a special or private act of the legislature passed in 1888. This act, after naming certain individuals, provides that "They and their associates, successors and assigns, be, and they are hereby, created a body-politic and corporate, under the name and style of Louisville Fire & Life Protective Association." The second section of the act declares:

"The object of this association shall be the organization and maintenance of a salvage corps for the protection of property at and after fires, and the examination

as to the causes of fires, and for consultation and action in reference to such matters pertaining to the interest of this association as may be deemed advisable."

Section 8 provides that, "This corporation shall have power to provide suitable rooms for the transaction of their business, and also provide and maintain a corps of men, with proper officers, whose duty it shall be, so far as practicable, to discover and prevent fires, with suitable apparatus to save life and personal property at or after a fire; and the better to enable them so to act with promptness and efficiency, full power is hereby granted to such corps and its officers to enter any building on fire, or which, in their judgment, is exposed to, or in danger of, taking fire from other burning buildings, to protect and save life and property, or any part thereof, at or after the fire."

Section 12 reads: "The officers and men of this association, with their teams and apparatus, shall have the right of way, while getting to a fire, through any street, lane or alley in said city, subject to the rights of the fire department; and any violation of the rights of the said protective association shall be punished in the same manner as is provided for the violation of the rights of the fire department of said city of Louisville."

Other sections of the act provide for the election of officers and the government of the association, and in sections 9 and 10 provision is made for defraying its expenses, which are chargeable to the fire insurance companies doing business in the city. The act on its face shows that the Association is a mere agent of the fire insurance companies engaged in business in the city, and that it was created for the purpose of minimizing the loss that these companies might suffer on account of fire in property covered by insurance.

With this understanding of the purpose of the creation of the Association and the business it was engaged in at the time under investigation, we will now proceed to a consideration of the legal questions involved. In support of the judgment appealed from, it is argued by counsel for the Association that it performed services of such character as entitled its vehicles and servants to enjoy the special privilege granted by section 12 of the charter, which gives it the free right of way while going to a fire over any of the streets of the city, and therefore, the persons in charge of the street-car, when they had notice that the automobile was coming, should have

stopped the car before reaching the intersection or should have moved across Third street, so that the automobile might have the free and unobstructed use of the street.

On the other hand, it is contended by counsel for the railway company that as the street-car was lawfully standing on the intersection, the damage to the automobile was due solely to the negligence of the persons in charge of it, and section 12 of the act, giving to the automobile the right of way in the street, is void and of no effect in so far as it attempts to give to the Association and its vehicles special and exclusive rights and privileges in and over the streets.

Which one of these contentions is correct depends on the proper construction of section 3 of the Constitution when applied to the act under which the privilege of superior rights in the streets is asserted, as it is of course manifest that unless the privilege of using the streets to the exclusion of other users, attempted to be conferred by section 12, is valid, its use of the streets must be controlled and regulated by the general laws applicable to the use of the streets by individuals and corporations.

Section 3 of the present Constitution, which is substantially the same as the section of the Constitution, in force in 1888, reads in part as follows: "All men when they form a social compact are equal, and no grant of exclusive, separate, public emoluments or privileges shall be made to any man or set of men except in consideration of public services."

In an effort to avoid the prohibition contained in this section against special privileges it is argued by counsel for the Association that the superior right to the use of the streets given by the act is not an exclusive or separate privilege and the case of the Commonwealth v. Whipps, 80 Ky. 269, is relied on to support this position. Aside from the fact that this case has not been followed in subsequent cases and is not to be recognized as legalizing the grant of exclusive privileges or emoluments except in consideration of public services, it does not sustain counsel. In discussing the section of the Constitution under consideration the court said:

"It is plain, we think, that this constitutional inhibition was intended to prevent the exercise of some public function or an exclusive privilege affecting the interests and rights of the public generally, when not in consideration of public service."

From this statement of the view of the court as ex-

pressed in the Whipps case it is apparent that, if the Whipps case could be regarded as authority, it would not justify the privilege claimed by the Association, as the privilege attempted to be conferred on it affects the interests and rights of the public generally. It seems clear that if the General Assembly of the State undertakes to give to an individual or a corporation rights in public streets and places that are not enjoyed by other individuals or corporations, it is attempting to grant to the favored individual or corporation exclusive and special privileges denied to the public generally, and that affect the rights of the public generally.

Leaving out of view for the moment the question of public service, all members of the general public, without regard to the place or position they occupy, or the business they are engaged in, are entitled to the equal use and enjoyment of public streets and places, and no man or set of men is entitled, by virtue of the place or position they hold in society, or the business they are engaged in, or the duties they perform, to privileges or rights in these public places that the whole body of the public are not equally entitled to. The streets and public places of cities and towns and the highways of the state belong to the public, are set apart for public use, and no favoritism or discrimination in this use will be allowed as between private individuals.

Coming now to the question of public service. In the section of the Constitution before quoted emphatic expression has been given to the principle that the legislature is without authority to grant to any man or set of men exclusive, separate, public emoluments or privileges except in consideration of public service, and the principle so declared has been rigidly adhered to, as may be seen by an examination of Gordon v. Winchester Building Association, 12 Bush 110; Commonwealth v. Bacon, 13 Bush 210; Kentucky Trust Co. v. Lewis, 82 Ky. 579; Owen County Burley Tobacco Society v. Brumback, 128 Ky. 137; Barbour v. Louisville Board of Trade, 82 Ky. 645.

In making this broad statement we do not of course mean that the principle announced should be applied to legislation dealing with a class, or to assert that the section of the Constitution cited denies to the legislature the power to classify persons and enact laws for their government, protection or benefit as a class. In many instances class legislation, based on reasonable distinc-

tions, has been upheld, and legislative acts, conferring upon classes privileges and immunities denied to others not in the class dealt with, have been approved. Commonwealth v. Remington Typewriter Co., 127 Ky. 177; Katzman v. Commonwealth, 140 Ky. 124: Hager v. Walker, 128 Ky. 1.

But the Act we are considering is not class legislation in the sense that such legislation is authorized. It is an attempt to confer upon a single corporation privileges not enjoyed by any other private person or corporation, and the only ground upon which a legislative declaration, conferring such exclusive or separate benefits or privileges, can rest, is that the grant is in consideration of public service. If this vital consideration is wanting, the legislation must fail. Whenever, therefore, we find a legislative attempt, outside of the field of legitimate class legislation, to confer upon any man or set of men, privileges, emoluments or benefits denied to the public generally, and its validity is assailed, the only question to be decided is, was the privilege, emolument or benefit granted in consideration of public service?

From this expression of our views it will be seen that the question comes down to the proposition,—does this Association perform public service in the meaning of the Constitution? We think it does not We do not find in the Act creating this corporation any suggestion of public control or the imposition of any duty owing to the public. Its servants and employes are not and cannot be required by any public authority to attend fires or do anything for the protection of life or property. When they do attend they go as the agents and representatives of the insurance companies and to further their interests. No penalty is fixed for the failure of the employes of the association to attend fires, and no state, city or other public official or authority has the right to control, or direct, or interfere with the management of its affairs.

It is as free from the control of public agents as any other distinctly private corporation could be. It is doubtless true, as may be freely conceded, that the employes of the Association, when they attend fires in the interest of and for the benefit of the insurance companies, also perform a public service in protecting and saving life and property and in preventing the spread of fire; but the service so rendered to the public is merely inci-

dent to and a part of the business they are engaged in as agents of the insurance companies. What is done for the benefit of the public and in the interest of the public good is primarily done for and in the interest of the private concerns they are employed by. The public service rendered by this Association is not the character of public service contemplated by the Constitution, nor does it entitle the persons who render it to be set apart as the beneficiaries of special privileges.

The public service that may entitle certain individuals, including private corporations, to privileges and immunities not enjoyed by the public generally, is a public service that carries with it some measure of public control and supervision, and the right of public control and authority must precede or accompany the grant of the privilege, and be so much a part of it that the privilege cannot be exercised without incurring the responsibility and liability that attaches to the performances of public duties. In short the beneficiary of every grant of special privileges must be in some degree the servant of the public and subject to the control and authority of some public agency.

This is the test to which the right to the enjoyment of special privileges by individuals and private corporations must be subjected, and by this standard their right to privileges and immunities not allowed to the general public must be adjudged.

Counsel undertake to bring this case within the doctrine that permits railroad companies and other public service corporations to enjoy special privileges, but the principle that upholds these grants cannot be extended to embrace this Association. Railroad Companies and telephone companies and other public service corporations, although they are private corporations, as distinguished from public corporations are granted special privileges, such as the right of Eminent Domain, because they are in a measure public corporations and subject to public control. They are chargeable with certain duties to the public and are answerable to public authority for a failure to perform them. They are granted a limited share of governmental authority, and, in consideration of this, they must render to the public the service that was the inducement to the grant, and it is upon this ground alone that the special privileges often granted to private, but public service, corporations are sustained.

Louisville Gas Co. v. Citizens Gas Light Co., 115 U. S., 683, 29 L. Ed., 510; McReynolds v. Smallhouse, 8 Bush, 447; Gordon v. Winchester Building Association, supra; Kentucky Trust Co. v. Lewis, 82 Ky., 579; Barbour v. Louisville Board of Trade, supra.

The case of Flynn v. Louisville Railway Co., 110 Ky., 662, is also relied on by counsel for the Association as supporting the proposition that the privilege granted by the Act is not unconstitutional. The facts in the Flynn case are quite similar to the facts in this case, and it was held that Flynn, an employe of the Association, was entitled to recover damages for injuries sustained in a collision between a wagon in which he was riding and a street-car. It is also true that in the course of the opinion the court said: "It also appears that said wagon by law had the right of way in the streets." The question, however, here raised as to the validity of the Act conferring the right of way in the streets, was not considered by the court and evidently was not discussed by counsel representing the parties in this court. Under these circumstances the mere isolated statement of the court that the Association had the right of way in the streets should not be regarded as upholding the validity of the grant that is here directly assailed.

For the reasons stated we hold that so much of the Act as gives to the Association a preference in the use of the streets is void, and the motion for a peremptory instruction, requested by the street railway company, should have been sustained. The judgment is reversed, with directions for a new trial in conformity with this opinion.