Teri C. **WILLIAMS**, Appellant,

v.

Patricia Lynn Herald **WILSON**, Appellee.

No. 96–SC–1122–DG.

Supreme Court of Kentucky.

April 16, 1998.

Rehearing Denied Aug. 27, 1998.

Benjamin J. Hays, Elizabeth M. Linville, Mark A. Matics, Hays & Hays, Winchester, Kevin J. Hable, Virginia H. Snell, Jean W. Bird, Wyatt, Tarrant & Combs, Louisville, for Appellant.

Kendall Robinson, Booneville, Joe C. Savage, Savage, Garmer & Elliott PSC, Lexington, for Appellee.

Hugh F. Young, Jr., Reston, VA, Victor E. Schwartz, Mark A. Behrens, Crowell & Moring LLP, Washington, DC, William D. Grubbs, Woodward, Hobson & Fulton LLP, Louisville, for Amicus Curiae, Product Liability Council, Inc.

James R. Cox, John S. Reed, II, Reed Weitkamp Schell Cox & Vice, Louisville, for Amicus Curiae, Kentucky Chamber of Commerce, Associated Industries of Kentucky, Kentucky Bankers Association, and Kentucky Coal Association.

LAMBERT, Justice.

This Court granted discretionary review (CR 76.20) to consider whether KRS 411.184 violates one or more provisions of the Constitution of Kentucky, thereby rendering the statute invalid and unenforceable. To resolve this question of constitutional law, it is necessary to first determine whether, in material respects, the statute impairs the common law of this Commonwealth as it existed

prior to adoption of our present Constitution, thereby implicating the doctrine of jural rights. In the event we determine that the statute does change well settled common law with respect to recovery of punitive damages, we will proceed to re-examine the doctrine of jural rights as it has been attacked in this forum as erroneous and unsound.

In 1988 the Kentucky General Assembly considered broad tort reform legislation embodied in HB 551. From among the proposals, the Legislature enacted a statute codified at KRS 411.184 intended to modify Kentucky law with respect to punitive damages. Sparks, *A Survey of Kentucky Tort Reform,* 17 Northern Ky. L.Rev. 473 (1989). In general, the intent of the Legislature was to redefine the circumstances in which punitive damages were recoverable, and toward that end a new legal standard was established. Departing from the traditional common law standard which permitted a jury to impose punitive damages upon a finding of gross negligence as measured by an objective standard, the new statutory standard, here under review, requires a determination that the defendant acted with "flagrant indifference to the rights of the plaintiff and with a subjective awareness that such conduct will result in human death or bodily harm." It also requires proof by clear and convincing evidence. The Fayette Circuit Court and the Court of Appeals decided the constitutional question and invalidated the statute on the view that it offends Sections 14, 54 and 241 of the Constitution of Kentucky.[1] Both courts below held that the statute effectively destroyed the common law right of action for punitive damages and that such was precluded by the doctrine of jural rights.

The facts which give rise to this litigation are unremarkable but not unimportant. On May 18, 1990, at 7:00 a.m., appellee, Patricia Lynn Herald Wilson, was en route to the place of her employment as a school teacher. As she approached the intersection of Man-O-War and Palumbo in Lexington, she was struck by the vehicle being driven by appellant, a person who was intoxicated. At the scene, appellant was arrested and charged with DUI. She subsequently pled guilty to DUI in the Fayette District Court.

Appellee commenced litigation in the Fayette Circuit Court claiming compensatory and punitive damages. Appellant did not personally participate in the litigation although she was before the court and was represented by counsel. Appellee was unable to take appellant's deposition and appellant did not appear at trial or make an in-person defense.

At trial and after the close of all the evidence, appellant objected to the giving of an instruction on punitive damages. She asserted that the evidence did not support such an instruction due to the absence of evidence of her subjective awareness that her conduct would result in death or bodily harm. In response to this contention the trial court agreed with appellant, and for appellee's failure to present proof required by KRS 411.184, refused to give a punitive damages instruction. Appellee then modified her position asserting that the punitive damages statute was unconstitutional and sought a punitive damages instruction based on common law gross negligence. Upon review of the evidence the trial court held that such an instruction was warranted and submitted the case to the jury for a determination of punitive damages upon an instruction from *Horton v. Union Light, Heat & Power Co.,* Ky., 690 S.W.2d 382, 388 (1985), which requires proof of "wanton or reckless disregard for the lives, safety or property of others."[2]

In its findings of fact and conclusions of law rendered in support of its judgment hold-

---

1. In addition to its principal holding, the Court of Appeals found reversible error in the trial court's decision to instruct the jury upon common law principles after the case had been practiced in reliance on the statutory standard. As a result, the Court of Appeals vacated the punitive damages judgment and directed retrial of the issue. From this adverse decision, appellee did not seek further review by means of a cross-motion for discretionary review. CR 76.21. As such, the Court of Appeals' reversal for a new trial on punitive damages is not before this Court.

2. It should be noted that the trial court withheld entry of judgment until the Attorney General had been notified of the constitutional challenge and until after briefing and a determination that the statute was unconstitutional.

ing KRS 411.184 unconstitutional, the trial court analyzed the statutory requirements and the common law requirements to determine whether the statute actually changed the common law. While the trial court believed the fact of appellant's intoxication would authorize a finding that she acted with flagrant indifference, the court found no evidence of appellant's subjective awareness that her conduct would result in death or bodily harm. On the other hand, the court found the evidence sufficient to satisfy the gross negligence standard of "wanton or reckless indifference to the rights of others." *Id.* Unmistakably, the trial court believed the statutory standard went far beyond the common law gross negligence standard, particularly with respect to knowledge of the inevitability of harm.

> [T]he Court found that the evidence did not support a jury finding of "malice" as defined in the statutes sufficient to warrant a jury instruction on the issue. No evidence was introduced at trial that the Defendant specifically intended to cause tangible or intangible injury to the Plaintiff. In addition, although this Court believes the evidence of the Defendant's intoxication at the time of the accident was sufficient to support a jury finding that the Defendant acted with flagrant indifference to the rights of the Plaintiff, no evidence was introduced regarding the Defendant's *"subjective awareness* (underlining added) that such conduct [would] result in human death or bodily harm." Therefore, the evidence did not support an instruction to the jury on punitive damages under KRS 411.184.

Slip op. at 3. The Court of Appeals agreed with the trial court. It observed that in the pre–1891 cases in which gross negligence was defined, that neither intentional wrong nor the implication of bad faith belonged in the definition.

Despite its view that the pre–1891 cases represented "[d]ivergent lines of authority," Judge Johnstone, writing for the Court of Appeals' majority, stated:

> [W]hen Kentucky's highest court allowed the plaintiff to recover punitive damages for gross negligence using an objective,

"reasonable person" standard, it fixed that recovery avenue as a "jural right." Consequently, by denying the plaintiff a common law gross negligence instruction and further imposing a subjective awareness standard in the definition of "malice," we find the legislature has limited punitive damage recovery in circumstances otherwise allowing these damages prior to the adoption of our Constitution.

Slip op. at 13.

### THE STATUTE VERSUS COMMON LAW

■ Appellant contends that KRS 411.184 is not a departure from the common law standard as there was no "well-established" standard prior to adoption of our Constitution. She argues that the statute merely clarified the confusion existing in common law and codified an existing standard which would be applicable to all claims for punitive damages. Appellant also argues that pre–1891 case law and decisions in this century reveal that malice, as expressed in various forms, is no different than subjective awareness under the statute; that malice necessarily presumes actual awareness. Appellee responds that the right to recover punitive damages for gross negligence was well established prior to 1891 and that the statutory requirement of subjective awareness of death or bodily harm represents the effective abolishment of negligence-based recovery of punitive damages and substitution of a requirement of knowledge or intent.

The decisions of this Court which bear upon the legal question under consideration have been rendered over the course of a century and a half. While the numbers of such decisions are not vast, neither are they insubstantial. In the process of this analysis we will focus on a few of the leading cases trusting that they sufficiently express the major concepts and the development of the law.

Going first to the pre–1891 cases, one encounters *Chiles v. Drake,* 59 Ky. (2 Met.) 146 (1859), in which the right to recover vindictive damages was allowed on the basis of recklessness although the killing was "not intentional." In *Louisville & Nashville R.R. v. McCoy,* 81 Ky. 403 (1883), gross neglect

was the basis for recovery of punitive damages, and the court held that the definition of gross negligence required no proof of a defendant's intention to cause harm or show bad faith. This definition was upheld in *Louisville & Nashville R.R. Co. v. Sheets*, 11 Ky. L. Rptr. 781, 13 S.W. 248 (1890). Other cases from this period are not inconsistent. *Fleet and Sample v. Hollenkemp*, 52 Ky. 219, 227, 56 Am.Rep. 563 (1852) (punitive damages were allowed for inexcusable gross negligence "whether ignorantly or by design, whether with or without knowledge of the defendants."); *Kountz v. Brown*, 55 Ky. (16 B. Mon.) 577, 586 (1856) (allowed recovery of exemplary damages for injuries "recklessly committed"); and *Hawkins Co. v. Riley*, 56 Ky. (17 B. Mon.) 101, 110 (1856) (punitive damages were allowed where a collision was caused by the defendant's "wantonness, recklessness, or gross negligence."). It is true that some cases from this period define gross negligence or wantonness or malice to include elements which approach knowing or intentional conduct. *See e.g., Louisville & Nashville R.R. Co. v. Robinson*, 4 Ky. 509 (1868), and *Louisville & Nashville R.R. Co. v. Chism*, 47 S.W. 251 (1898). Nevertheless, from our review of the cases, there is little doubt that prior to 1891, Kentucky law was well established that punitive damages could be recovered for negligent conduct which exceeded ordinary negligence whether such conduct was expressed as gross negligence, recklessness, wantonness, or some other such term.

In the period immediately after adoption of the Constitution, this Court decided *Louisville & Nashville R.R. v. Kelly's Adm'x*, 38 S.W. 852 (1897), and *Illinois Central R. Co. v. Stewart*, 63 S.W. 596 (1900). Not only are these cases well-reasoned and comprehensive, but due to the time of their rendition, they provide timely insight as to the state of Kentucky law when our 1891 Constitution was adopted. A powerful passage from *Kelly's Adm'x* is directly on point and worthy of repetition:

> It is well settled in this state that, for injuries not resulting in death, exemplary damages could be recovered where the negligence causing the injury was gross. "The civil law affirms the existence of

three degrees of negligence,—slight, ordinary, and gross. The distinction between these degrees of negligence has been repeatedly recognized in the courts of common law; ... the term 'negligence' including all its grades." "This is a common-law proceeding to recover damages for a personal injury not resulting in death, and punitive damages were recoverable if the proof showed that the company failed to use such diligence in keeping its railroad bridge in repair as careless and inattentive persons usually exercise in the prosecution of business of like character. The absence of slight care in the management of a railroad train is gross negligence."

*Id.* at 854 (citations omitted).

Just four years after rendition of *Louisville & Nashville R.R. v. Kelly's Adm'x, supra*, this Court decided *Illinois Central R. Co. v. Stewart, supra*, and reaffirmed our reliance on the definition of gross negligence approved a generation earlier in *Louisville & Nashville R.R. Co. v. McCoy, supra*. The Court stated that "where gross negligence was shown, punitive damages might be allowed. This rule has been so often followed and approved by this court in subsequent cases that it is not an open question." *Stewart*, 63 S.W. at 599. Recent case law reaffirms the continued viability of these venerable decisions.

> Older cases, a number of which pre-date our constitution recognize and approve the award of punitive damages in addition to compensatory damages against corporations and other employers based on gross negligence of their employees.

*Horton v. Union Light, Heat & Power Co.*, Ky., 690 S.W.2d 382, 388 (1985) (citations omitted). *Horton* also contains insightful discussion of the theory underlying punitive damages, the circumstances in which such damages may be awarded, and re-states the prevailing rule in this jurisdiction:

> In order to justify punitive damages there must be first a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by a "wanton or reckless disregard for the lives, safety or property of others."

This bears an element not distinguishable from malice implied from the facts.

*Id.* at 389–90.

Appellant asserts that "the Court will find no 'definitive statement,' 'point of recognition' or 'well-established' rule regarding liability for punitive damages at common law." We disagree. As shown by the decisions discussed hereinabove, the well established common law standard for awarding punitive damages was gross negligence. While the concept was not expressed in the same language in every opinion rendered prior to adoption of our Constitution, and while the language has not remained perfectly constant in this century, there is no doubt that unintentional conduct amounting to gross negligence, as that concept is well defined in *Horton,* was sufficient to authorize recovery of punitive damages. As the new statute requires proof of a subjective awareness that harm will result, it amounts to a vastly elevated standard for the recovery of punitive damages and a clear departure from the common law. The facts of this case well illustrate the fundamental change brought about by the statute.

By the literal language of the statute proof of "subjective awareness that such conduct will result in human death or bodily harm" is required. Ordinarily, such proof could only be obtained from the party who inflicted the harm, but in the instant case the defendant did not participate and her testimony could not be taken. As such, there was no way to prove essential elements of the statute. From this a new litigation strategy might well emerge. In cases of gross negligence, but where compensatory damages for wrongful death or personal injury would otherwise be modest, a defendant might elect to forego any participation, relying on the court to prevent an excessive award of compensatory damages, safe in the knowledge that despite his gross negligence, no award of punitive damages could be made.

■ Relying on *Maysville & Lexington Turnpike Co. v. G.C. Kniffen,* 4 Ky. Op. 92 (1870), and other cases which predicate exemplary damages on malicious conduct, appellant argues that " '[n]egligence so gross as to raise a presumption of malice' is qualitatively no different than 'a subjective awareness that such conduct will result in human death or bodily injury.' " With this we vehemently disagree. Gross negligence, however it may be qualified, is conduct lacking intent or actual knowledge of the result. Moreover, and while recognizing that at some point along the continuum between negligent conduct and intentional conduct there may be a convergence of the concepts, this Court must remain mindful that where statutes are applicable, trial courts must instruct in statutory language. "It is fundamental that an instruction based on a statute should encompass the wording of the statute so far as possible." *Sorg v. Purvis,* Ky., 487 S.W.2d 943, 945 (1972). "Where the statute speaks in no uncertain terms, it hardly can be said that the use in an instruction of other terms not meaning substantially the same thing is not prejudicial error." *McCullouch's Adm'r v. Abell's Adm'r,* Ky., 272 Ky. 756, 115 S.W.2d 386, 390 (1938).

■ Under these authorities, whatever theoretical merger of gross negligence and subjective awareness of harm might be perceived by the court and counsel, the jury would be informed only of the legal standard contained in the statute and by any reasonable reckoning, the statutory standard far exceeds gross negligence. We are unimpressed by the argument that the statute could be "loosely interpreted" so as to avoid limiting or destroying the common law right to recovery of punitive damages. It would be the height of duplicity to at once uphold the constitutionality of a statute and declare that it not be literally observed.

Contrary to appellant's assertion, it is unnecessary that we discover a precise, infallible common law rule prior to application of the doctrine of jural rights. *Ludwig v. Johnson,* 243 Ky. 533, 49 S.W.2d 347 (1932), uses phrases such as "well-established prior to the enactment of our constitution," "long-established rights" and "safeguarded common law rights." We believe these are sufficiently flexible standards to support the conclusion that recovery of punitive damages for grossly negligent conduct was a recognized common

law right which predated the 1891 Constitution.

## JURAL RIGHTS

■ Appellant makes a multi-faceted attack upon the jural rights doctrine relying extensively on Lewis, *Jural Rights under Kentucky's Constitution: Realities Grounded in Myth*, ___ Ky. L.Rev. 953 (1991–92). She contends that constitutional text does not support any such doctrine of law; that the Debates of the Constitutional Convention provide no support, and she effectively agrees with Professor Lewis' view that jural rights is illegitimate and "evolve[d] from the pen of the judiciary." *Id.* at 973.[3] Predictably, appellee relies on this Court's decision in *Ludwig v. Johnson, supra,* and the virtually unbroken line of decisions following and applying it for more than sixty years. She also relies on the history and tradition in this Commonwealth of protecting the right of recovery of injured persons. With the conflict thus joined, we will weigh in.

The doctrine of jural rights was first articulated as such in this Court's 1932 decision in *Ludwig v. Johnson, supra.* However, language in *Kelly's Adm'x, supra,* an 1897 case, suggests that the idea of placing certain rights of recovery of damages for death or personal injury off-limits to legislative abolishment had been recognized much earlier.

> In other words, we are of opinion that the convention intended to extend the common-law right of action to recover both compensatory and exemplary damages for injuries not resulting in death to cases in which death ensued; and a very forcible argument in favor of this construction is found in section 54 of the constitution, where it is provided that "the general assembly shall have no power to limit the amount to be recovered for injuries resulting in death or for injuries to person or property." It seems evident that this denial of power to the legislature to limit the amount of recovery would hardly have been inserted if the intent of section 241

was to place a limit upon the amount of recovery.

*Kelly's Adm'x,* 38 S.W. at 854.

*Ludwig v. Johnson, supra,* concerned the constitutionality of an automobile guest statute whereby a non-paying passenger in an automobile was prohibited from bringing a civil action for recovery of damages for injures negligently inflicted by the host. Appellant asserted that by virtue of Sections 14, 54 and 241 of the Constitution of Kentucky, the statute was void. After duly noting the strong presumption in favor of the constitutionality of acts of the General Assembly, the Court meticulously considered the constitutional provisions at issue. For its central holding, the Court concluded that when Section 54 was read in conjunction with Sections 14 and 241, "the conclusion is inescapable that the intention of the framers of the Constitution was to inhibit the Legislature from abolishing rights of action for damages for death or injuries caused by negligence." *Id.* 49 S.W.2d at 350. Analyzing similar statutes and decisions from other jurisdictions, the Court quoted with approval from a decision of the high court of Oregon, *Stewart v. Houk,* 127 Or. 589, 271 P. 998, 272 P. 893, 61 A.L.R. 1236, analyzing a constitutional provision similar to the one found in Section 14. "The purpose of this provision is to save from legislative abolishment those jural rights which had become well established prior to the enactment of our Constitution." *Ludwig,* 49 S.W.2d 347 at 350 (quoting *Stewart,* 271 P. at 999).

The final substantive paragraph of *Ludwig v. Johnson* states the philosophical principles so often repeated by which this Court has protected from legislative infringement the rights of citizens for recovery of damages for personal injuries and death:

> The statute [guest statute] under consideration violates the spirit of our constitution as well as its letter as found in sections 14, 54, and 241. It was the manifest purpose of the framers of that instrument to preserve and perpetuate the common-law

---

**3.** Illustrative of his strongly held view, Professor Lewis has written "no court is *that infallible* in its development of the common law. Under the jural rights doctrine, however, the Kentucky Supreme Court is infallible. *Any* legislative abolition or restriction of a common law right of recovery within the scope of the jural rights doctrine is invalid."

right of a citizen injured by the negligent act of another to sue to recover damages for his injury. The imperative mandate of section 14 is that every person, for an injury done him in his person, shall have remedy by due course of law. If the allegations of appellant's petition are true, he has suffered serious injuries occasioned by the negligent acts of the appellee Darwin Johnson. The constitution guarantees to him his right to a day in court for the purpose of establishing the alleged wrong perpetrated on him and recovery of his resultant damages.

*Ludwig,* 49 S.W.2d 347 at 351.

Since its rendition, *Ludwig v. Johnson* has been followed many times. One of the more significant cases adhering to its principles is *Happy v. Erwin,* Ky., 330 S.W.2d 412 (1959), which invalidated a statute by which city employees were exempted from liability. The Court held that Sections 14 and 54 as interpreted in *Ludwig* protected the common law right of citizens to bring suit for recovery of damages from municipal employees. Expressing a view appropriate to the instant case, the Court said that if the Legislature could immunize certain classes of public officers, it could exempt all public officers and employees from liability, and if logically extended, could immunize private groups the Legislature determined to be entitled to immunity. The Court concluded by saying, "[t]hat is exactly what the constitutional provisions above quoted were designed to prevent." *Happy v. Erwin,* 330 S.W.2d at 414.

In *Kentucky Utilities Co: v. Jackson County Rural Electric Cooperative,* Ky., 438 S.W.2d 788 (1968), this Court held the right of indemnity to be a jural right which existed prior to adoption of the Constitution and thus a right protected from elimination by the General Assembly. In *Saylor v. Hall,* Ky., 497 S.W.2d 218 (1973), we invalidated a statute which required actions against home builders to be brought within five years after substantial completion of the home. As grounds for our decision we stated that the statute "destroys, pro tanto, a common-law right of action for negligence that proximately causes personal injury or death, which existed at the times the statutes were enact-

ed." *Id.* at 224. Other cases in this line and relying on *Ludwig v. Johnson* are *Carney v. Moody,* Ky., 646 S.W.2d 40 (1982), *Gould v. O'Bannon,* Ky., 770 S.W.2d 220 (1989), *McCollum v. Sisters of Charity,* Ky., 799 S.W.2d 15 (1990), and *Perkins v. Northeastern Log Homes,* Ky., 808 S.W.2d 809 (1991).

The doctrine. of jural rights has also been examined and found to be inapplicable where the statute did not eliminate or restrict claims recognized at common law. *Kirschner v. Louisville Gas & Electric Co.,* Ky., 743 S.W.2d 840 (1988). *Fireman's Fund Ins. v. Government,* Ky., 635 S.W.2d 475 (1982), expressed the principle as follows:

There is still another ground upon which Const. Secs. 14 and 54 cannot be applicable. Aside from the mention of defamation in Sec. 14, these constitutional provisions expressly apply only to actions for death, personal injuries, and property damage. Cf. *Kentucky Hotel v. Cinotti,* 298 Ky. 88, 182 S.W.2d 27, 29 (1944), and *Zurich Fire Ins. Co. of New York v. Weil,* Ky., 259 S.W.2d 54, 57 (1953), in both of which it is recognized that Sec. 54 refers to actions in tort. In a subrogation suit, of course, the plaintiff asserts the rights of his subrogor, but in an action for indemnity he sues in his own right, and upon a basis even more tenuous than an implied contract.

*Id.* at 477–478. In *Fireman's Fund,* Chief Justice Palmore, being ever a scholar, corrected an overly-broad phrase in *Happy v. Erwin, supra,* which had been attributed to *Ludwig v. Johnson.* He restated the actual holding in *Ludwig* as follows: "The actual holding of Ludwig is that the intention of the Constitution was 'to inhibit the Legislature from abolishing rights of action for damages *for death or injuries caused by negligence.*'" (Emphasis added.) 49 S.W.2d at 350. *Fireman's Fund,* 635 S.W.2d at n. 7.

By virtue of its long duration and frequent repetition, the jural rights doctrine has become virtually axiomatic. Moreover, by dictum in *Wittmer v. Jones,* Ky., 864 S.W.2d 885 (1993), the statute here under review has been broadly circumscribed.

Throughout this litigation State Farm has presented various arguments against submitting the issue of punitive damages to

the jury based on its interpretation of statutory language found in the new punitive damages statute enacted in 1988, now codified as KRS 411.184. It suffices to say that this Court could not interpret KRS 411.184 to destroy a cause of action for punitive damages otherwise appropriate without fatally impaling upon jural rights guaranteed by the Kentucky Constitution, Sections 14, 54, and 241. *Perkins v. Northeastern Log Homes*, Ky., 808 S.W.2d 809, 817 (1991). As we stated when addressing a similar problem in *In Re: Beverly Hills Fire Litigation*, Ky., 672 S.W.2d 922, 926 (1984): "We shall not so interpret it."

*Id.* at 890.

■ As the foregoing authorities demonstrate, to the exclusion of any reasonable opinion to the contrary, the doctrine of jural rights is deeply ingrained in Kentucky law and to abandon it now would amount to an extraordinary change. Principles of predictability counsel against such major shifts in the law. Of course, constitutional doctrine is not immune from reconsideration (*Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)) and indeed this Court has declared that we will refrain from "sanctification of ancient fallacy." *Hilen v. Hays*, Ky., 673 S.W.2d 713, 717 (1984). Therefore, we will reconsider the central premise of the jural rights doctrine to determine whether it is fallacious.

■ Sections 14, 54 and 241 have been interpreted to work in tandem and to establish a limitation upon the power of the General Assembly to limit common law rights to recover for personal injury or death. The fact that these provisions might not have been "conceived as some sort of package" (Lewis, *Jural Rights* at 972) does not prevent them from being construed together to arrive at a separate principle. Section 14, which provides that "every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law," has been held to prevent abolishment of those jural rights which were well established prior to adoption of the Constitution. One may disagree with such a construction, but the language used does not exclude it.

Some discern no substantive law component in Section 14 and depend on *Johnson v. Higgins*, 60 Ky. (3 Met.) 566 (1861), and its construction of the predecessor of Section 14 which contained identical language, to safeguard only procedural due process. Notwithstanding the view expressed in *Johnson v. Higgins*, the prevailing political climate at the time of adoption of the 1891 Constitution and the language used permits an inference that the Constitutional Convention desired to impose limitations upon legislative authority and cases decided contemporaneously or close in time would appear to be persuasive of Delegates' intent. *See Perkins v. Northeastern Log Homes*, 808 S.W.2d at 812. *Kentucky State Board for Elementary and Secondary Education v. Rudasill*, Ky ., 589 S.W.2d 877 (1979), observed that:

> [T]hese delegates [to the 1890 Constitutional Convention] examined the guarantees afforded the citizens of sister states by their constitutions along with the traditional protections given to and expected by the citizens of Kentucky. Then guided by their own consciences, they drafted a comprehensive bill of rights for the new constitution. It is generally recognized that the convention of 1890 was comprised of competent and educated delegates who were sincerely concerned with individual liberties.

*Id.* at 880. This Court has endorsed the principle of contemporaneous construction as providing special insight to the Delegates' intent: "The judges recognizing that tradition in their opinions wrote with a direct, firsthand knowledge of the mind set of the constitutional fathers,...." *Commonwealth v. Wasson*, Ky., 842 S.W.2d 487, 492 (1992). Accordingly, our decisions in *Louisville & Nashville R.R. v. Kelly's Adm'x, supra,* and *Illinois Central R. Co. v. Stewart, supra,* are entitled to greater weight in our constitutional analysis.

Section 54 is more explicit. It provides that the General Assembly "shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property." Despite this forthright, compelling language, it has been contended that while the General Assembly

would have no power to impose limitations on the amount recoverable in an action for injuries to person or property, it could abolish an action for such injuries. Such is at odds with the tenor of Section 54. With their extraordinary distrust of powerful economic interests, particularly corporations and railroads (Lewis, *Jural Rights,* at 968), it is inconceivable that the Delegates would have forbidden imposition of damage limitations but allowed abolishment of the underlying cause of action, thereby facilitating the ultimate limitation on damages. Sections 14 and 54 have been read together to prohibit the Legislature from limiting the amount of recovery by destroying the right.

> In holding such act unconstitutional, it was pointed out that the objective of section 14 was to preserve those jural rights which had become well established prior to the adoption of the Constitution. It was also decided that section 54 prohibited the legislature from limiting the amount of recovery by destroying the right.

*Happy v. Erwin,* 330 S.W.2d at 414.

While Section 241 does not apply expressly to injury cases, it is a component of the constitutional limitation on the power of the General Assembly to limit or destroy actions for recovery of damages arising from negligence and serves to prevent legislative encroachment in proper cases.

Appellant contends that our previous jural rights cases, *Ludwig v. Johnson, supra,* and its progeny, fails to take account of Section 233 of the Constitution of Kentucky. This section declares that on the day of Kentucky's statehood, June 1, 1792, all laws

> in force in the State of Virginia, and which are of a general nature and not local to that State, and not repugnant to this Constitution, nor to the laws which have been enacted by the General Assembly of this Commonwealth, shall be in force within this State until they shall be altered or repealed by the General Assembly.

Appellant interprets this section to give the General Assembly plenary power to abrogate or modify the common law. The fallacy of her argument is apparent. This Court has held that Sections 14, 54 and 241 of our Constitution render certain common law rights impervious to legislative dilution or destruction. Such rights are therefore subject to the same restrictions with respect to modification by the General Assembly as are constitutional provisions.

With respect to the contention that punitive damages fall outside the scope of rights protected by Sections 14 and 54 of the Constitution of Kentucky on the view that such damages do not compensate for injuries, *Chiles v. Drake, supra, Louisville & Nashville R.R. Co. v. Kelly's Adm'x, supra,* and *Horton v. Union Light, Heat & Power, supra,* are dispositive.

Perhaps the most controversial aspect of our jural rights decisions has been the "constitutionalization" of newly discovered rights. This heavily criticized concept is best exemplified in *Perkins v. Northeastern Log Homes, supra,* as follows:

> In drafting our constitutional protections in §§ 14, 54 and 241, our founding fathers were protecting the jural rights of the individual citizens of Kentucky against the power of the government to abridge such rights, speaking to their rights as they would be commonly understood by those citizens in any year, not just in 1891.

*Id.* at 816. On the foregoing theory, *Carney v. Moody, supra,* and *Fireman's Fund Ins. v. Government, supra,* which had taken a more restrictive view of the scope of jural rights, were overruled.

Whatever the wisdom of the extension of the jural rights doctrine from its point of origin, i.e., preservation of well established rights to recover damages for negligently inflicted injury or death as recognized in 1891, the outcome in this case does not depend on the validity of any such extension. The rights at issue here were well established in 1891 and the courts below have properly applied the jural rights doctrine to prevent legislative erosion or abolishment.

This Court's decision in *Kentucky State Board for Elementary and Secondary Education v. Rudasill, supra,* provides a proper methodology for constitutional analysis. It requires that text be the beginning point and then shifts to the Debates of the 1890 Constitutional Convention. Thereafter, the focus

becomes decisions of the high court and our history and traditions. When the foregoing factors are applied to the jural rights doctrine, no abolishment is required. Such flaws as may have crept into the theory arise from improper application and not from fundamental misconception.

## CONCLUSION

Both the trial court and the Court of Appeals held KRS 411.184(1)(c) to be in violation of the jural rights doctrine and unconstitutional. As stated hereinabove, we agree and therefore affirm the courts below. The trial court and the Court of Appeals differed on whether KRS 411.184(2) was properly before the court, with the Court of Appeals having determined that it was not. We affirm the Court of Appeals in its conclusion and express no opinion herein as to the constitutionality of KRS 411.184(2).

This cause is hereby remanded to the Fayette Circuit Court for further proceedings not inconsistent herewith.

GRAVES, LAMBERT, STUMBO and WINTERSHEIMER, JJ., and RONALD P. HILLERICH, Special Justice, concur.

STEPHENS, C.J., concurs by separate opinion.

COOPER, J., dissents by separate opinion.

STEPHENS, Chief Justice, concurring.

I reluctantly concur with the majority opinion.

However, for some time, I have begun to doubt the validity of the doctrine of the jural rights which "popped" into our law in 1932. *Ludwig v. Johnson*, 243 Ky. 533, 49 S.W.2d 347 (1932).

As the dissent points out, and as the Law Journal Article by Professor Thomas Lewis emphasizes, there is very little, if any, basis for this now routinely accepted doctrine in the Kentucky Constitution or in the Constitutional Debates. *Jural Rights Under Kentucky's Constitution: Realities Grounded in Myth*, 80 K.L.J. 953 (1991–92).

Perhaps even more importantly, and recent in years, this Court has moved the jural rights doctrine far beyond its original aegis, so as to restrict even the General Assembly and this Court from changing its precedents, even though created after the adoption of the present constitution.

Although, I believe this Court should carefully consider the powerful arguments set forth in Justice Cooper's dissent, reliance on precedent is a strong tenet of our common law. Precedent should not lightly be overruled.

The doctrine of stare decisis is a judicial policy implemented to maintain stability and continuity in our jurisprudence. It is based upon the belief that similar cases should be decided in a similar manner. When a court of institutional review announces a principle of law to apply to a general set of facts, the doctrine of stare decisis requires the court, in the absence of "sound legal reasons to the contrary" to adhere to that same principle in future cases where there is a similar factual pattern. *Hilen v. Hays*, Ky., 673 S.W.2d 713, 717 (1984). "Stare decisis is ordinarily a wise rule of action. But it is not a universal, inexorable command." *Washington v. W.C. Dawson & Co.*, 264 U.S. 219, 238, 44 S.Ct. 302, 309, 68 L.Ed. 646 (1924) (Brandeis, J., dissenting).

The principle of stare decisis does not require us to adhere blindly to previous decisions when we determine those decisions were in error. *D & W Auto Supply v. Department of Revenue*, Ky., 602 S.W.2d 420, 424 (1980) (*citing Daniel's Adm'r v. Hoofnel*, 287 Ky. 834, 155 S.W.2d 469, 471 (1941)). I only concur because I believe there should be extensive debate before this Court changes such an established rule of law. I hope that the logic of the dissent will be the beginning of such a process.

COOPER, Justice, dissenting.

This case arrives in this Court in a peculiar procedural posture. Under a factual scenario clearly entitling the plaintiff/Appellee to an instruction on punitive damages, the trial court ruled first that the language of KRS 411.184(1)(c) precluded such an instruction, then that KRS 411.184 was unconstitutional because it abolished the common law right to

punitive damages. Having thus discarded KRS 411.184, the trial court instructed the jury in accordance with the common law standard established in *Horton v. Union Light, Heat & Power Co.*, Ky., 690 S.W.2d 382, 389–90 (1985), *viz*: conduct exhibiting a wanton or reckless disregard for the lives and safety of other persons, or a willful or malicious act. From this set of circumstances has arisen the great and unnecessary debate as to (1) whether KRS 411.184 is unconstitutional as violative of the so-called "jural rights" doctrine, and (2) whether the "jural rights" doctrine has any valid constitutional basis.

## I.

There was no need to address the "jural rights" doctrine in this case, for KRS 411.184 does not abolish the common law right to punitive damages. Faced with an argument similar to that accepted by the trial court in this case, we specifically so held in *Wittmer v. Jones*, Ky., 864 S.W.2d 885 (1993). Justice Leibson wrote in that case:

> Throughout this litigation State Farm has presented various arguments against submitting the issue of punitive damages to the jury based on its interpretation of statutory language found in the new punitive damages statute enacted in 1988, now codified as KRS 411.184. It suffices to say that this Court could not interpret KRS 411.184 to destroy a cause of action for punitive damages otherwise appropriate without fatally impaling upon jural rights guaranteed by the Kentucky Constitution, Sections 14, 54, and 241.... "We shall not so interpret it."

*Id.* at 890 (citations omitted).

KRS 411.184 and .186 did not destroy the cause of action for punitive damages, but merely established standards to guide the jury in its determination of whether such damages are appropriate and the amount to be awarded. Never before have we questioned the authority of the General Assembly to enact statutes establishing the degree of culpability necessary to entitle a litigant to recover punitive damages. "We do not think it any longer an open question as to the authority of the general assembly to pass the statute in question." *Clark's Adm'x v. Louisville & N.R. Co.*, 101 Ky. 34, 39 S.W. 840, 841 (1897); *see also Wright v. Woods' Adm'r*, 96 Ky. 56, 27 S.W. 979 (1894). Even though the majority finds fault with the fact that the statute refers to malice rather than gross negligence, we held in *Horton v. Union Light, Heat & Power Co., supra*, that "wanton or reckless disregard for the lives, safety or property of others" is indistinguishable from "malice implied from the facts." *Id.* at 389–90. (Remember that last phrase.)

The only possible argument for the proposition that KRS 411.184 "abolished" the right to punitive damages is the one rejected in *Wittmer v. Jones, supra*, but accepted by the trial court in this case, *i.e.*, that the element of "subjective awareness" set forth in the definition of malice, KRS 411.184(1)(c), can be proven only by the direct testimony of the person against whom punitive damages are sought. Since the defendant/Appellant was unavailable to testify, the trial court reasoned that Appellee could not prove Appellant's "subjective awareness," thus was not entitled to an instruction on punitive damages. However, as Justice Leibson also wrote in *Fowler v. Mantooth*, Ky., 683 S.W.2d 250 (1984), a case addressing the requirement of proof of malice as a condition precedent to an award of punitive damages, "Malice may be implied from outrageous conduct, and need not be express so long as the conduct is sufficient to evidence conscious wrongdoing." *Id.* at 252. This obviously is what the Court meant by the phrase "malice implied from the facts" in *Horton v. Union Light, Heat and Power Co., supra*, at 390. This is also in conformance with the principle that "a plaintiff is entitled to prove a defendant's state of mind through circumstantial evidence." *Ball v. E.W. Scripps Co.*, Ky., 801 S.W.2d 684, 689 (1990), *cert. denied*, 499 U.S. 976, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991), *quoting from, Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 668, 109 S.Ct. 2678, 2686, 105 L.Ed.2d 562 (1989). Even in a criminal case, where the elements of the offense must be proven beyond a reasonable doubt, *mens rea* may be inferred from the act itself and/or the circumstances surrounding it. *Tungate v. Commonwealth*, Ky., 901 S.W.2d 41 (1995);

*Anastasi v. Commonwealth,* Ky., 754 S.W.2d 860 (1988); *Lambert v. Commonwealth,* Ky. App., 835 S.W.2d 299 (1992).

It is no longer arguable in this day and age that proof of the act of driving while intoxicated creates an inference of "subjective awareness" on the part of the actor of the potential consequences of the act. If that inference would satisfy the "beyond a reasonable doubt" standard of proof in a criminal case, it is sufficient to satisfy the "clear and convincing evidence" standard set forth in KRS 411.184(2).

The majority opinion also takes umbrage with the statute's use of the "clear and convincing evidence" standard as a "vastly elevated standard for the recovery of punitive damages and a clear departure from the common law." (Op., p. 264.) Even if that were true, such would not implicate the "jural rights" doctrine, since the establishment of a heightened standard of proof would not "abolish" the right to collect punitive damages, but only establish the standard of proof to be applied by the jury in determining whether to award them. In fact, both malice and fraud have always required proof by clear and convincing evidence. *E.g., Hardin v. Savageau,* Ky., 906 S.W.2d 356 (1995); *Warford v. Lexington Herald–Leader Co.,*

Ky., 789 S.W.2d 758 (1990), *cert. denied,* 498 U.S. 1047, 111 S.Ct. 754, 112 L.Ed.2d 774 (1991). The standard recognizes the quasi-criminal nature of punitive damages by taking the middle ground between the standard ordinarily used in civil cases of proof by a "preponderance of the evidence," and the criminal law standard of proof "beyond a reasonable doubt." While holding that Due Process does not require a standard higher than the "preponderance of the evidence," if buttressed by other procedural and substantive protections, the United States Supreme Court has stated that "There is much to be said in favor of a State's requiring, as many do, ... a standard of clear and convincing evidence" or, even, "beyond a reasonable doubt." *Pacific Mutual Life Ins. Co. v. Haslip,* 499 U.S. 1, 23, n. 11, 111 S.Ct. 1032, 1046, 113 L.Ed.2d 1 (1991). The "clear and convincing evidence" standard for punitive damages has been adopted by legislative enactment or judicial decision in twenty-nine other states and the District of Columbia,[1] and has been recommended by each of the principal academic groups to analyze the law of punitive damages since 1979, *i.e.,* the American Bar Association,[2] the American College of Trial Lawyers,[3] the American Law Institute,[4] and the National Conference of Commissioners on Uniform State Laws.[5]

1. ALA. CODE § 6–11–20 (1993); ALASKA STAT. § 09–17–020 (1994); CAL. CIV. CODE § 3294(a) (West 1970 & Supp.1995); GA. CODE ANN. § 51–12–5.1 (Supp.1995); ILL. REV. STAT. ch. 735, para. 5/2–1115.05(b) (1995); IOWA CODE ANN. § 668A.1 (West 1987); KAN. STAT. ANN. § 60–3701(c) (1994); MINN. STAT. ANN. § 549.20 (West 1988 & Supp.1995); MISS. CODE ANN. § 11–1–65(1)(a) (Supp.1995); MONT. CODE ANN. § 27–1–221(5) (1995); NEV. REV. STAT. ANN. § 42.005(1) (1991); N.J. STAT. ANN. § 2A:15–5.12 (1995); N.C. GEN STAT. § 1D–15(b) (1996); N.D. CENT. CODE § 32–03.2–11 (Supp.1995); OHIO REV. CODE ANN. § 2307.80(A) (Anderson 1991); OKLA. STAT. ANN. tit. 23, § 9.1 (West Supp.1995); OR. REV. STAT. § 18.537 (1995); S.C. CODE ANN. § 15–33–135 (Law.Co-op.Supp.1995); S.D. CODIFIED LAWS ANN. § 21–1–4.1 (1987); TEX. CIV. PRAC. & REM. CODE ANN. § 41.003 (West 1997); UTAH CODE ANN. § 78–18–1 (1992); *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 723 P.2d 675 (1986); *Jonathan Woodner, Co. v. Breeden,* 665 A.2d 929 (D.C.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 1080, 137 L.Ed.2d 215 (1997); *Masaki v. General Motors*

*Corp.,* 71 Haw. 1, 780 P.2d 566 (1989); *Travelers Indem. Co. v. Armstrong,* 442 N.E.2d 349 (Ind. 1982); *Tuttle v. Raymond,* 494 A.2d 1353 (Me. 1985); *Owens–Illinois v. Zenobia,* 325 Md. 420, 601 A.2d 633 (1992); *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896 (Tenn.1992); *Wangen v. Ford Motor Co.,* 97 Wis.2d 260, 294 N.W.2d 437 (1980); *Rodriguez v. Suzuki Motor Corp.,* 936 S.W.2d 104 (Mo.1996) (en banc). One state, Colorado, requires proof beyond a reasonable doubt in punitive damages cases. *See* COLO. REV. STAT. § 13–25–127(2) (1987).

2. American Bar Association, Special Committee on Punitive Damages of the American Bar Association, Section on Litigation, *Punitive Damages: A Constructive Analysis* 19 (1986).

3. American College of Trial Lawyers, *Report on punitive Damages of the Committee on Special Problems in the Administration of Justice: Approved by the Board of Regents.* 15–16 (1989).

4. American Law Institute, 1 *Enterprise Responsibility for Personal Injury: Reporters' Study* 248–49 (1991).

The jury in this case should have been instructed on punitive damages in accordance with KRS 411.184 and .186 as initially requested by the plaintiff/Appellee. If the trial court had done so, there would have been no need to address whether the "jural rights" doctrine has any basis in our Constitution.

## II.

In his well reasoned and well documented article, *Jural Rights Under Kentucky's Constitution: Realities Grounded in Myth,* 80 Ky. L.J. 953 (1991–92), Professor Thomas P. Lewis, a preeminent scholar of Kentucky constitutional law, makes a compelling case for the proposition that the "jural rights" doctrine is nothing more nor less than a judicial usurpation of a traditional legislative prerogative. *Id.* at 964 and 976. As first enunciated in the case of *Ludwig v. Johnson,* 243 Ky. 533, 49 S.W.2d 347 (1932), the doctrine appears to have been intended to perpetually tether the jurisprudence of this Commonwealth to nineteenth century tort principles, *i.e.,* any common law right of action existing prior to the adoption of the 1891 Constitution is sacrosanct and cannot be abolished. *Id.,* 49 S.W.2d at 351; *cf. Carney v. Moody,* Ky., 646 S.W.2d 40 (1983). In arriving at that conclusion and in coining the phrase "jural rights," the *Ludwig* court relied principally upon the Oregon case of *Stewart v. Houk,* 127 Or. 589, 271 P. 998, 999 (1928). *Ludwig v. Johnson, supra,* 49 S.W.2d at 350. Oregon subsequently abandoned the "jural rights" concept. *Josephs v. Burns,* 260 Or. 493, 491 P.2d 203, 207 (1971). We, on the other hand, have expanded it to include any common law right of action, whether or not that right existed prior to the adoption of the 1891 Constitution. *Perkins v. Northeastern Log Homes,* Ky., 808 S.W.2d 809, 815–18 (1991), *overruling, Carney v. Moody, supra. Ergo,* any act of the legislature abolishing any right created by judicial decision violates the "jural rights" doctrine and is, therefore, unconstitutional. (!) As if that were not expansive enough, the majority of this Court today declares that any act of the legislature which "impairs," though does

not "abolish," a common law right, is also unconstitutional. (Op., p. 260.) As Professor Lewis foresaw, this Court has now assumed for itself the sole power to make any meaningful changes in the area of tort law. Lewis, *supra,* at 980.

If that had been the intent of the framers of the 1891 Constitution, one can only wonder why they included Section 233 and the First paragraph of the Schedule accompanying the Constitution, both of which vest in the legislature the power to alter or repeal any laws in force and effect at the time of the adoption of the Constitution. *Aetna Ins. Co. v. Commonwealth,* 106 Ky. 864, 51 S.W. 624 (1899). In *Fireman's Fund Ins. Co. v. Government Employees Ins. Co.,* Ky., 635 S.W.2d 475 (1982), we reiterated that Section 233 and the First paragraph of the Schedule explicitly recognize that the common law is subject to repeal or alteration by the legislature. *Id.* at 476; *see also Ruby Lumber Co. v. K.V. Johnson Co.,* 299 Ky. 811, 187 S.W.2d 449, 453 (1945). And as recently as *Commonwealth, ex rel. Cowan v. Wilkinson,* Ky., 828 S.W.2d 610 (1992), we held that "Judicially created common law must always yield to the superior policy of legislative enactment and the Constitution." *Id.* at 614. There is not one word in the 6,023 typewritten pages (double columns, elite type) of the reported *Proceedings and Debates of the Constitutional Convention of 1890* (hereinafter *"Debates"*) which supports a contrary conclusion. As Professor Lewis points out, there is no factual basis for a belief that the framers ever entertained the notion that the common law is immune from repeal or alteration. Lewis, *supra,* at 983. Certainly, no such intent can be discerned in the three constitutional provisions relied upon in *Ludwig, supra,* and in the majority opinion in this case.

Section 14 is as follows:

All courts shall be open and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay.

This provision was first adopted as Article XII, Section 13, of our 1792 Constitution. It

---

**5.** *MODEL PUNITIVE DAMAGES ACT* § 5 (1996).

was readopted verbatim as Article X, Section 13, of the Constitution of 1799 and as Article XII, Section 15, of the Constitution of 1850. As Professor Lewis explains, it has its roots in Chapter XXIX of Magna Charta, a fact recognized by delegate Robert Rodes of Warren County, chairman of the Committee on Preamble and Bill of Rights, during his report of this provision to the other delegates at the 1890 Convention. Lewis, *supra*, at 965; 1 *Debates, supra*, at 444. More than ten years after the adoption of the Constitution of 1850 and thirty years prior to the adoption of the Constitution of 1891, our predecessor Court was called upon in the case of *Johnson v. Higgins*, 3 Metc. 566, 60 Ky. 566 (1861) to interpret the meaning of this provision.

This provision is found in the bill of rights. It prescribes certain general duties for the courts of the State, and also lays down general rules for the manner of conducting their business, the effect of which may be thus stated: 1. They are to be held in an open and public manner, and their proceedings are not to be secret or concealed from public view. 2. They are to administer justice without sale—that is, they are not to accept compensation from litigants; and 3. They are not to deny any one a fair trial, nor to delay the same, except upon sufficient legal grounds for continuance.

The terms and import of this provision show that it relates altogether to the judicial department of the government, which is to administer justice "by due course of law," and not to the legislative department, by which such "due course" may be prescribed.

Any other construction would make it inconsistent with other clauses of the constitution, and, in fact, render it practically absurd.

*Id.*, 60 Ky. at 570–71. This interpretation was reaffirmed in *Barkley v. Glover*, 4 Metc. 44, 61 Ky. 44 (1862).

In rendering his report to the 1890 convention, delegate Rodes first read the language of what is now Section 14, then reported: "That is unobjected to, and is the equivalent of section 15 of the present Constitution." 1

*Debates, supra*, at 439. In readopting this provision verbatim and without debate, *Id.* at 1001, the delegates are presumed to have also adopted the construction given to it in *Johnson v. Higgins* and *Barkley v. Glover*. *Hodgkin v. Kentucky Chamber of Commerce*, Ky., 246 S.W.2d 1014, 1016–17 (1952); *cf. Butler v. Groce*, Ky., 880 S.W.2d 547 (1994); *Cawood v. Coleman*, 294 Ky. 858, 172 S.W.2d 548 (1943); *Ray v. Spiers*, 281 Ky. 549, 136 S.W.2d 750 (1940) (same presumption applies to statutes reenacted after judicial construction). The holdings in *Johnson v. Higgins* and *Barkley v. Glover* having thus been ingrafted into Section 14 at the time of its adoption, the subsequent characterization of those holdings in *Ludwig v. Johnson, supra*, at 351, as "clearly unsound" is legally irrelevant.

Section 54 is as follows:
The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property.

On its face, the purpose of this Section is to prevent the legislature from placing dollar limits on awards of damages "for injuries." It has nothing to do with punitive damages, which are not awarded as compensation "for injuries," but to punish and deter wrongdoing. *Hensley v. Paul Miller Ford, Inc.*, Ky., 508 S.W.2d 759, 762–63 (1974); *Ashland Dry Goods Co. v. Wages*, 302 Ky. 577, 195 S.W.2d 312, 315 (1946). In reporting what became Section 54 to the 1890 convention, delegate Ignatius A. Spalding of Union County, chairman of the Committee on Legislative Department, explained it as follows:

Section thirty-nine [of the committee report] is a new section, forbidding the General Assembly from limiting amount recovered for damage to person or property. The Legislature has, perhaps, in some cases, put a limit upon the amount to be recovered for damages by railroad accidents to persons resulting in death or in injury to person or property. This section forbids the General Assembly from putting any limit upon the amount of damages to be recovered, leaving it to the jury.

3 *Debates, supra*, at 3793. Following the rejection of an amendment to strike this

provision, it was adopted without further debate. *Id.* at 3916.

If the words contained in a constitutional provision are ambiguous, the debates of the constitutional convention which adopted it may be resorted to in ascertaining the purpose sought to be accomplished or the mischief designed to be remedied by that provision. *Barker v. Stearns Coal & Lumber Co.*, 287 Ky. 340, 152 S.W.2d 953, 956 (1941); *Commonwealth v. Kentucky Jockey Club*, 238 Ky. 739, 38 S.W.2d 987, 993 (1931); *Higgins v. Prater*, 91 Ky. 6, 14 S.W. 910, 912 (1890) (interpreting a provision of the Constitution of 1850). In fact, there is nothing ambiguous about Section 54. If there were, the explanation by delegate Spalding clarifies that its purpose was to preclude legislation placing dollar limits on awards of damages for injuries to persons or property. Nothing in its language or history suggests an intent to strip the legislature of its historical prerogative reiterated in Section 233 and the First paragraph of the Schedule to enact legislation in derogation of the common law.

Section 241 is as follows:

Whenever the death of a person shall result from an injury, inflicted by negligence or wrongful act, then, in every death case, damages may be recovered for such death, from corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. The General Assembly may provide how the recovery shall go and to whom belong; and until such provision is made, the same shall form part of the personal estate of the deceased person.

It would be incongruous to suggest that this section was designed to protect and preserve a common law right of action; for there is not and never has been a common law right of action for wrongful death. *Smith's Adm'r v. National Coal & Iron Co.*, 135 Ky. 671, 117 S.W. 280 (1909); *Eden v.*

*Lexington & Frankfort R.R. Co.*, 53 Ky. (14 B. Mon.) 165 (1853). "The maxim, 'Actio personalis moritur cum persona,' was the uniform rule of the common law, and prevails in Kentucky to-day (sic), except where it has been modified by the express language of the Constitution and statute." *Gregory v. Illinois Cent. R. Co.*, Ky., 80 S.W. 795 (1904). There were wrongful death statutes in existence at the time of the 1890 convention, but there was substantial uncertainty not only as to whom the cause of action belonged, but when the action might be maintained, if at all. *Howard's Adm'r v. Hunter*, 126 Ky. 685, 104 S.W. 723, 725 (1907); *see Henderson's Adm'r v. Kentucky C. Ry. Co.*, 86 Ky. 389, 5 S.W. 875 (1887). Just prior to the convention, a judge of the Jefferson Circuit Court had declared a section of the wrongful death act unconstitutional because it purportedly discriminated against railroads.[6] *Debates, supra,* at 4687. The delegates obviously were concerned about the future viability of tort recovery for wrongful death and trusted neither the legislature nor the courts to protect that statutory cause of action. Just as obviously, the adoption of Section 241 had nothing to do with protecting common law rights.

If, as posited in *Ludwig v. Johnson* and *Perkins v. Northeastern Log Homes*, common law causes of action in tort are cloaked with constitutional protection, that protection is not limited to acts of the legislature, but must apply also to acts of the judiciary. Surely, the majority of this Court does not believe that the Constitution applies only to the legislature and not to us.[7] We would be forced to conclude under the logic perpetuated by the majority opinion in this case that this Court, itself, acted unconstitutionally when we abolished the common law tort of alienation of affections by unanimous vote in *Hoye v. Hoye*, Ky., 824 S.W.2d 422 (1992).

This Court has recently reiterated the maxim that public policy is within the constitutional domain of the legislature.

---

**6.** The Jefferson Circuit Court's ruling was reversed on appeal, *Louisville Safety–Vault & Trust Co. v. Louisville & N.R. Co.*, 92 Ky. 233, 17 S.W. 567 (1891), but not until after the convention had concluded its work.

**7.** *But see Giuliani v. Guiler*, Ky., 951 S.W.2d 318, 326 (1997) (dissenting opinion).

[T]he establishment of public policy is not within the authority of the courts. Section 27 of the Kentucky Constitution provides that the powers of government be divided into three distinct units: Executive, Legislative and Judicial. The establishment of public policy is granted to the legislature alone. . . .

*Commonwealth, ex rel. Cowan v. Wilkinson, supra,* at 614.

Courts are well suited to adjudicate individual disputes concerning discrete issues and parties. The Founding Fathers recognized this when they drafted the United States Constitution to give the judiciary jurisdiction to decide "cases and controversies." U.S. Const. art. III § 2 cl. 1; *Flast v. Cohen,* 392 U.S. 83, 94, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1968); *Associated Industries of Kentucky v. Commonwealth,* Ky., 912 S.W.2d 947, 951 (1995). On the other hand, the judicial process is not well suited to the formulation of public policy. As Professor Lewis notes, individuals, lobbies, or other collectives cannot talk to a court.

> Briefs *amicus curiae* may be filed, but the virtue of the judicial system is that its primary focus must be on the trial record and parties before it; judges are not generally equipped or expected to make textually generalized, interrelated rule-type decisions based on "legislative facts." The common law decisions of a court are law, and no better system has been devised than this technique, by which general principles of law emerge from small bits of real life experience. But the technique has worked so well not because judges have a monopoly on wisdom but because the people have always reserved the power to modify principles that in the light of mounting experience have failed to work to their satisfaction.

Lewis, *supra,* at 983.

On the other hand, legislatures are uniquely well equipped to reach fully informed decisions about the need for broad public policy changes in the law. They have more complete access to information, including the ability to receive comments from persons representing a multiplicity of perspectives and to use the legislative process to obtain new information. If a point needs further elaboration, a witness can be recalled. The rationale for legislative preeminence in formulating broad public policy is reflective of these inherent strengths in the legislative process.

Section 28 of the Constitution provides as follows:

> No person or collection of persons, being of one of those departments [legislative, executive or judicial] shall exercise any power properly belonging to either of the others, except in the instances hereinafter *expressly* directed or permitted. (Emphasis added.)

There is nothing in Section 14, 54 or 241 which *expressly* transfers the power to formulate public policy in the area of tort law from the legislative department to the judicial department. In the absence of such an *express* provision, *Ludwig v. Johnson* and its progeny have simply ignored Section 28 and discerned *implied* support for this transfer of power in a combined interpretation of Sections 14, 54 and 241. Of course, premising the "jural rights" doctrine upon mere implication is itself a direct violation of Section 28. Nevertheless, the historical analysis of the origins and purposes of Sections 14, 54 and 241, as set forth in Professor Lewis's article and in this dissenting opinion, reveals not even an implication that those sections are interrelated or that the framers intended for any or all of them, read separately or together, to transfer power over public policy with respect to tort law from the legislature to the judiciary. We, like Bonaparte, have placed that crown upon our own head.

Nor do I subscribe to the proposition that sixty-six years of error must be perpetuated for the sake of "predictability." (Op., p. 267.) After all, although *Ludwig v. Johnson* has been on the books for sixty-six years, it purported to overrule over seventy years of precedent represented by *Johnson v. Higgins* and *Barkley v. Glover, supra;* and it and its progeny have effectively reversed 800 years of settled Anglo–Saxon jurisprudence. Lewis, *supra,* at 964. I agree with Justice Leibson that "[t]he doctrine of stare decisis does not commit us to the sanctification of ancient fallacy." *Hilen v. Hays,* Ky., 673

**276**

S.W.2d 713, 717 (1984). As for "predictability," who could have predicted that after sixty-six years of applying the "jural rights" doctrine to legislative enactments which "abolish" common law rights of action, this Court would now extend its scope to enactments which merely "impair" those rights?

### III.

Read together, KRS 411.184 and KRS 411.186 establish adequate standards to guide a properly instructed jury, *e.g.,* Palmore, 2 *Kentucky Instructions to Juries (Civil),* § 39.15 (1989), in assessing punitive damages in a particular case. *See Honda Motor Co., Ltd. v. Oberg,* 512 U.S. 415, 443, n. 6, 114 S.Ct. 2331, 2345, n. 6, 129 L.Ed.2d 336 (1994) (O'Connor, J., dissenting). A growing plurality on the United States Supreme Court now believes that punitive damage verdicts rendered by inadequately instructed juries violate substantive due process requirements. *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 585–99, 116 S.Ct. 1589, 1604–10, 134 L.Ed.2d 809 (1996); *cf. TXO Production Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 462–64, 113 S.Ct. 2711, 2723–24, 125 L.Ed.2d 366 (1993); *Pacific Mutual Life Ins. Co. v. Haslip, supra,* 499 U.S. at 18–20, 111 S.Ct. at 1043–44. A reading of these opinions suggests that the common law standard for awarding punitive damages approved in *Horton v. Union Light, Heat & Power Co., supra,* and reaffirmed by the majority opinion herein (Op., p. 263), which was used to instruct the jury in this case, may no longer pass federal constitutional muster. Thus, in discarding KRS 411.184, we are left with a common law standard for punitive damage verdicts which is protected *in perpetuum* by the "jural rights" doctrine, but which may well violate the procedural due process requirements of the Fifth and Fourteenth Amendments to the United States Constitution.

I would reverse the Court of Appeals and the Fayette Circuit Court and remand this case for a new trial on the issue of punitive damages with directions to instruct the jury in accordance with KRS 411.184 and .186.